UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
FIELD DAY, LLC f/k/a NEW YORK MUSIC
FESTIVAL, LLC, and AEG LIVE LLC f/k/a
AEG CONCERTS LLC,

                         Plaintiffs,

           - against -

COUNTY OF SUFFOLK, SUFFOLK COUNTY
DEPARTMENT OF HEALTH SERVICES,
SUFFOLK COUNTY EXECUTIVE ROBERT
GAFFNEY, COMMISSIONER OF THE
SUFFOLK COUNTY DEPARTMENT OF
HEALTH SERVICES BRIAN L. HARPER,
COMMISSIONER OF THE SUFFOLK
COUNTY POLICE DEPARTMENT, JOHN C.
GALLAGHER, DIRECTOR OF THE SUFFOLK
COUNTY DEPARTMENT OF HEALTH
SERVICES ROBERT MAIMONI, CHIEF OF
THE BUREAU OF PUBLIC HEALTH
PROTECTION BRUCE WILLIAMSON,
PRINCIPAL PUBLIC HEALTH SANITARIAN
ROBERT GERDTS, DEPUTY SUFFOLK
COUNTY ATTORNEY ROBERT CABBLE,
DEPUTY SUFFOLK COUNTY EXECUTIVE
JOE MICHAELS, SERGEANT PATRICK
MAHER OF THE SUFFOLK COUNTY POLICE
DEPARTMENT, THE TOWN OF RIVERHEAD,
RIVERHEAD CHIEF OF POLICE DAVID
HEGERMILLER, and NEW YORK STATE
HEALTH COMMISSIONER ANTONIA C.
NOVELLO,

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM & ORDER**
04-CV-2202 (DRH) (WDW)

**A P P E A R A N C E S :**

**O'MELVENEY & MEYERS LLP**

Attorneys for Plaintiffs
Times Square Tower
7 Times Square, 34th Floor
New York, New York 10036
By: Charles E. Bachman, Esq.

**OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**
Attorneys for New York State
120 Broadway, 24th Floor
New York, New York 10271-0332
By: Seth J. Farber, Esq.

**CHRISTINE MALAFI, SUFFOLK COUNTY ATTORNEY**
Attorney for the Suffolk County Defendants
100 Veterans Memorial Highway, P.O. Box 6100
Hauppauge, New York 11788
By: Christopher A. Jeffreys, Esq.

**SMITH, FINKELSTEIN, LUNDBERG, ISLER, AND YAKABOSKI, LLP**
Attorneys for Defendants Town of Riverhead and Chief of Police David Hegermiller
456 Griffing Avenue, P.O. Box 389
Riverhead, New York 11901

**HURLEY, District Judge:**

*INTRODUCTION*

The above-captioned Plaintiffs are concert promoters claiming that they were prevented from holding a "music festival" by the Defendants' unlawful and unconstitutional enforcement of New York's "Mass Gathering Law." The Plaintiffs seek a judgment declaring the law unconstitutional, and a permanent injunction that would prevent the Defendants from enforcing it in the future, as well as monetary relief and punitive damages.

The Plaintiffs have moved for a preliminary injunction that would enjoin "the New York Health Commissioner, Suffolk County, and their respective political subdivisions or

representatives from applying the Mass Gathering Law." The New York State Commissioner of Health (the "State") has opposed this motion, and has moved to dismiss the Plaintiffs' constitutional claims.[1]  For the reasons that follow, the State's motion is denied, and the Plaintiffs' motion is granted — with qualifications.

*BACKGROUND*

New York's Public Health Law § 225(4) empowers New York's Public Health Council to establish, subject to approval by the Health Commissioner, "sanitary regulations, to be known as the sanitary code of the state of New York."  Section 225(5)(o) of the law states that the sanitary code may:

> require that application be made for a permit to . . . hold or promote by advertising or otherwise a mass gathering which is likely to attract five thousand people or more and continue for twenty-four hours or more and authorize appropriate officers or agencies to issue such a permit when the applicant is in compliance with the established regulations and when it appears that . . . such gathering [can be] held without hazard to health and safety; establish regulations with respect to such gatherings to provide for: the furnishing of adequate undertakings to secure full compliance with the sanitary code and other applicable law, adequate and satisfactory water supply and sewerage facilities, adequate drainage, adequate toilet and lavatory facilities, adequate refuse storage and disposal facilities, adequate sleeping areas and facilities, wholesome food and sanitary food service, adequate medical facilities, insect and noxious weed control, adequate fire protection, and such other matters as may be appropriate for security of life or health.  In his review of applications for permits for the holding or promoting of such a gathering the permit-issuing official may require such plans, specifications and reports as he shall deem necessary for a proper review, and in his review of such applications, as well as in carrying out his other duties and functions in connection with such a gathering, the

---

[1]  The other Defendants have moved separately to dismiss the respective claims against them as well; these motions will be addressed in a separate decision

permit-issuing official may request and shall receive from all public officers, departments and agencies of the state and its political subdivisions such cooperation and assistance as may be necessary and proper.

Section 7-1 of New York's State Sanitary Code, promulgated pursuant to the above provision, states in relevant part:

> (a) No person shall hold or promote, by advertising or otherwise, a mass gathering unless a permit has been issued for the gathering by the permit-issuing official.
>
> (b) Application for a permit to promote or hold a mass gathering shall be made to the permit-issuing official, on a form and in a manner prescribed by the State Commissioner of Health, by the person who will promote or hold the mass gathering. Application for a permit to promote or hold a mass gathering shall be made at least 15 days before the first day of advertising and at least 45 days before the first day of the gathering. Water and sewage facilities shall be constructed and operational not later than 48 hours before the first day of the mass gathering. The application shall be accompanied by such plans, reports and specifications as the permit-issuing official shall deem necessary. The plans, reports and specifications shall provide for adequate and satisfactory water supply and sewerage facilities, adequate drainage, adequate toilet and lavatory facilities, adequate refuse storage and disposal facilities, adequate sleeping areas and facilities, wholesome food and sanitary food service, adequate medical facilities, insect and noxious weed control, adequate fire protection, and such other matters as may be appropriate for security of life or health.

10 NYCRR 7-1.40. The Sanitary Code also requires all mass gathering permit applications to be accompanied by an "engineering report" containing, in part,

> [D]etailed plans for transportation arrangements from noncontiguous parking facilities to the site to fully serve all reasonably anticipated requirements at a rate of no less than 20,000 persons per hour; including a statement from the county sheriff, State police, New York State Department of Transportation or other law enforcement agency certifying that the traffic control plan is satisfactory.

10 NYCRR 7-1.41(d)(2).

According to the Complaint, the Plaintiffs devoted extensive time, effort, and money to planning a two-day "music and arts festival," which was to be held in Enterprise Park, located in Riverhead, Suffolk County. But as a result of what the Plaintiffs allege was the Defendants' "unlawful manipulation" of the above law and regulations (hereinafter referred to collectively as the "Mass Gathering Law"), Suffolk County officials refused to issue the required mass gathering permit. Complaint ¶1. (According to the Defendants, the Plaintiffs did not receive a permit because they failed to make adequate arrangements for sufficient police and security personnel at the event.) The Plaintiffs claim to have suffered "financial losses in excess of $5 million, including lost revenues, advertising costs, costs associated with . . . staging the Festival at an alternative venue, and injury to its business reputation, financial standing, and goodwill with artists, ticket buyers, . . . and the concert promotion industry." The Plaintiffs also claim that they "continue to be at risk from Defendants' . . . continuing manipulation and application of the unconstitutional New York Mass Gathering Laws," and that "Defendants' conduct therefore continues to chill and interfere with Plaintiff's First Amendment rights to organize, promote, and stage future music festival events in Riverhead and elsewhere in Suffolk County and throughout New York State." Complaint ¶3.

## DISCUSSION

I.    *Dismissal of Plaintiffs' Constitutional Claims Is <u>Not</u> Warranted.*

    A.    *Dismissal motions: legal standards*

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents

attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim entitling him to relief. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003).

B. *Analysis of Plaintiffs' constitutional claims cannot be avoided.*

The State first notes that federal courts should avoid reaching constitutional questions where possible, and argues that because the Plaintiffs failed to secure adequate police for their proposed festival, "Suffolk County could have denied the permit on this basis alone," and this case can thus be resolved on other grounds than the Mass Gathering Law's constitutionality.

The State's argument goes to the appropriateness of addressing the Plaintiffs' "as applied" constitutional claims, not to the appropriateness of addressing the Plaintiffs' "facial" or "as enacted" constitutional claims. Since the Plaintiffs seek preliminary injunctive relief against any *future* enforcement of the Mass Gathering Law, the question of its facial constitutionality cannot be avoided by simply resolving, on some other grounds, the *past* application of the law.

C. *Plaintiffs may challenge the Mass Gathering Law's facial constitutionality.*

The State's next argument for dismissing the Plaintiffs' facial challenge to the

Mass Gathering Law (and also for opposing their motion for a preliminary injunction) is that the Plaintiffs have failed to show that the law is content-based or that it is related to speech. As the State notes, in *City of Lakewood v. Plain Dealer Publishing Co.* the U.S. Supreme Court set out a two-part test governing whether a facial First Amendment challenge may be made to a licensing scheme, and held that a facial challenge will not lie unless the scheme in question gives a governmental official "substantial power to discriminate based on the content or viewpoint of speech," and has a close "nexus to expression, or to conduct commonly associated with expression." 486 U.S. 750, 759 (1988). The State argues that Plaintiffs fail both prongs of "the *Lakewood* test" because the Mass Gathering Law neither regulates expression nor empowers officials to discriminate based on the content of any expression.

As discussed in Part II.B, *infra*, laws regulating the issuance of permits or licenses for mass gatherings have been deemed sufficiently speech-related to be facially challenged under the First Amendment.[2] *See, e.g., Thomas v. Chi. Park Dist.*, 534 U.S. 316 (2002). And in *City*

---

[2]    The State suggests an argument to the contrary based largely on *U.S. v. Kalb*, which upheld the facial constitutionality of regulations requiring a permit for any "non-commercial group use" of a national forest involving seventy-five or more individuals. 234 F.3d 827, 830 (3d Cir. 2000). In *Kalb*, the Third Circuit rejected a claim that the Forest Service licensing requirement was unconstitutionally overbroad for purportedly bestowing unbridled discretion upon forestry officials to grant or deny group use permits. *Id.* at 834-35. The court rejected the facial challenge because it found that the regulations "appl[y] with equal force to recreational, expressive, and all other special uses of the forest," were thus "closer to a law of general application," and accordingly failed the second prong of the *Lakewood* test discussed above. *Id.* at 834-35.

    *Kalb* is distinguishable from the present case, because the potential group uses of a national forest are much broader, and less typically tied to expressive conduct, than that of concert venues or other more traditionally public fora. But more importantly, *Kalb* has not been cited or followed by any other court. Because numerous other cases analyzing similar mass gathering laws have expressly found them to be directed at conduct commonly associated with expression, *Kalb* is not persuasive.

*of Lakewood* itself, the Supreme Court made it clear that a law can bestow "substantial power to discriminate" based on content or viewpoint by "condition[ing expressive] speech on obtaining a license or permit from a government official in that official's boundless discretion." *Id*. at 764. That is precisely what the Plaintiffs allege that the Mass Gathering Law does. Plaintiffs' facial challenge to the Mass Gathering Law therefore does lie, as more fully discussed in Part II, *infra*.

> D.  *The Mass Gathering Law grants officials unduly broad discretion to grant or deny permits for expressive activities.*

The State argues that even assuming that the Plaintiffs may bring a facial challenge to the Mass Gathering Law, such a challenge must fail as a matter of law. The State notes that the law is content-neutral (a point undisputed by the Plaintiffs), and that the law serves significant governmental health and safety interests (a point similarly undisputed). Finally, while admitting that even a content-neutral law serving important governmental interests cannot grant officials unduly broad discretion to grant or deny permits for expressive activities, the State argues that the Plaintiffs fail to demonstrate that the Mass Gathering Law does so. The State's arguments essentially mirror its arguments in opposition to the Plaintiffs' motion for a preliminary injunction, and are largely unpersuasive for the reasons discussed *infra* in Part II.C.[3] Accordingly, dismissal of the Plaintiffs' facial constitutional claims is unwarranted.

---

[3]    The State also argues that the Mass Gathering law was "construed as constitutional" in *County of Sullivan v. Filippo*, 315 N.Y.S.2d 519 (Supr. Ct. 1970). But as Plaintiffs note, the *Filippo* case never addressed the question of whether the law was unconstitutionally vague or overbroad; it only held that the regulation of mass gatherings was, overall, a valid exercise of the State's police powers — a point undisputed here. *Id.* at 546-47. *Filippo* thus has exceedingly limited persuasiveness.

II.     *Preliminary Injunctive Relief Is Warranted.*[4]

A.      *Preliminary Injunctions: legal standards*

" 'It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Wright, Miller, & Kane, *Federal Practice and Procedure* § 2948, at 129-130 (2d ed. 1995)). Accordingly, in order to obtain a preliminary injunction based on alleged violations of First Amendment rights, plaintiffs must demonstrate (1) that they are likely to suffer irreparable harm if their allegations are correct, and (2) that they are likely to prevail on the  merits of the action. *Gasparo v. City of New York*, 16 F. Supp.2d 198, 203 (E.D.N.Y. 1998)  (citing *Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996)).

B.      *Plaintiffs have shown that they will be irreparably harmed absent issuance of an injunction.*

The Supreme Court has stated that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).   The Supreme Court has also held that a licensing statute vesting "unbridled

---

[4]      The Plaintiffs speak of such relief being needed, *inter alia*, in light of other concerts or festivals they intend to promote in the future.  To the extent the Plaintiffs suggest that issuance of preliminary injunctive relief here bars non-parties to this proceeding from effecting the Mass Gathering Law as enacted to such future applications, their view seems to be overly optimistic.  *See U.S. v. Paccione*, 964 F.2d 1269, 1275 (2d Cir. 1992) ("[A] court generally may not issue an order against a nonparty."); and 11A Wright, Miller & Kane, *Federal Practice and Procedure* § 2956, at 335 (2d ed. 1995) ("A court ordinarily does not have power to issue an order against a person who is not a party and over whom it has not acquired in personam jurisdiction.").

discretion" in government officials or agencies to permit or deny expressive activity constitutes a "prior restraint" on such activity, and "the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-57 (1988). (Such self-censorship, obviously, constitutes a loss of First Amendment freedoms.) A law that requires a promoter to obtain a permit before "promoting a mass gathering at which persons intend to engage in expression protected under the First Amendment" constitutes a prior restraint on speech. *Zen Music Festivals, L.L.C. v. Stewart*, No. 98 Civ. 302, 2004 WL 1660452, at *2 (N.D. Tex. July 23, 2004) (citing *S.E. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553-54 (1975)), and *S. Or. Barter Fair v. Jackson County, Or.*, 372 F.3d 1128, 1135-36 (9th Cir. 2004) (holding that "mass gatherings bear a sufficient nexus to conduct commonly associated with expression" to be subject to facial challenge)).

The "musical aspects" of a concert or festival are forms of expression protected by the First Amendment, *see Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989), and in the present case, the Plaintiffs have indicated that they are "in the business of planning [music and arts festivals similar to the one underlying the present lawsuit] and will continue to be subject to the Mass Gathering Law on an on-going basis." The Mass Gathering Law is clearly also, in the current context, a prior restraint on expressive conduct. The Plaintiffs have thus sufficiently demonstrated that they will be irreparably harmed absent injunctive relief.

C.    *Plaintiffs have demonstrated that they are likely to succeed on the merits of <u>some</u> portions of their claim.*

The Plaintiffs argue that they are likely to succeed on the merits of their

underlying challenge to the constitutionality of the Mass Gathering Law, because it constitutes a prior restraint on speech, but does not contain narrow, objective, or definite standards limiting the relevant officials' discretion to refuse to issue a mass gathering permit.

As already suggested, the government has only "sharply circumscribed" authority to regulate speech or expressive conduct in public fora such as public parks. *Hobbs v. County of Westchester*, 397 F.3d 133, 148 (2d Cir. 2005). Prior restraints on speech, "such as a requirement that a permit be obtained in advance of the proposed speech or conduct," are not unconstitutional per se, but bear a heavy presumption against constitutional validity. *Id.* "Restraints on speech on the basis of its content, except in a few limited categories such as obscenity, defamation, and fighting words, are generally disallowed," and are strictly scrutinized. *Id.* By contrast, a less stringent "intermediate scrutiny" applies to regulations of expressive activity not based on content. *Id.* at 149. In this case, the parties do not dispute that the Mass Gathering Law does *not* facially restrict expressive speech on the basis of content.

A permit scheme controlling the time, place, and manner of speech must be narrowly tailored to serve a significant governmental interest. *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992). A government regulation allowing arbitrary control of speech is "inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981). "To curtail that risk, 'a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the

licensing authority,' " *Forsyth County*, 505 U.S. at 131 (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-151 (1969)), and "may not delegate overly broad licensing discretion to a government official." *Id.* at 130. In sum, where a municipality requires a permit for expressive activity, the "scheme" for issuance of the permit "must set objective standards governing the grant or denial of the permit in order to ensure that the officials not have the power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *Amandola v. Town of Babylon*, 251 F.3d 339, 344 (2d Cir. 2001) (internal quotations omitted)).

In support of their motion for a preliminary injunction, the Plaintiffs argue that the Mass Gathering Law unconstitutionally fails to set sufficiently narrow, objective, and definite standard to govern the decision to grant or denial of a mass gathering permit. In support of their motion to dismiss, the State argues the opposite. Because it is likely that at least several portions of the Mass Gathering Law will be held unconstitutional upon full review, as explained in Part D, *infra*, the Plaintiffs have established a sufficient likelihood of success on the underlying merits of their claims to warrant preliminary injunctive relief.

> D.  *The Mass Gathering Law is constitutionally infirm because it allows permit denials based on unspecified considerations of "health and safety," or "security of life and health."*

As noted, Public Health Law § 225(5)(o) authorizes New York's Public Health Council to promulgate sanitary regulations that, *inter alia*, (1) require a permit for a mass gathering, which may be issued "when it appears that . . . such gathering [may be held] without hazard to health and safety"; (2) require a permit applicant to furnish adequate assurances that

lavatory facilities and other listed necessities will be made available, together with assurances as to "such other matters as may be appropriate for security of life or health"; and (3) provide that such assurances be presented in "such plans, specifications and reports as [the permit-issuing officer] shall deem necessary for a proper review."

Pursuant to the authority provided in Section 225(5)(o), the Public Health Council adopted Sanitary Code Section 7-1.40(b).  That regulation requires mass gathering applications to be accompanied by "plans, reports and specifications" addressing such understandable concerns as "adequate . . . water suppl[ies]" and "sewerage facilities," but also "such other matters as may be appropriate for security of life or health."

As the Plaintiffs argue, the Mass Gathering Law's "catch-all" provisions, untethered to any standards for determination, effectively give the permit-issuing officials unconstitutionally unbridled discretion to deny a permit for any reason they see fit.  Indeed, the subject "catch-all" provisions echo analogous provisions previously held by various courts to be unconstitutional.  For example, in *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 149-52 (1969), the Supreme Court held unconstitutional a law allowing a town commission to refuse to issue a public gathering permit where "in its judgment the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused"; *see also City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 769 (1988) (phrase "such other terms and conditions deemed necessary and reasonable by Mayor" makes permit-mandating statute constitutionally impermissible); *Transp. Alternatives, Inc. v. City of New York*, 340 F.3d 72, 78 (2d Cir. 2003) ("[E]specially in view of the fact that the 11th prescribed factor is 'such other

information as the Commissioner shall deem relevant,' the statutory scheme effectively gives the Commissioner absolute, unregulated [and, accordingly, unconstitutional] discretion"); *Nichols v. Vill. of Pelham Manor*, 974 F. Supp. 243, 251 (S.D.N.Y. 1997) (holding unconstitutional ordinance under which "the Chief may not refuse a permit unless he determines that a denial is necessary to carry out one of the express purposes of the statute," but "it is the Chief's subjective determination of what is necessary that serves as the only limit on his power"); *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F. Supp. 1268, 1274 (C.D. Cal. 1996) (language allowing officials to "deny a conditional use permit if the proposed use would be 'detrimental to the public health, safety, or welfare of persons residing or working adjacent to the neighborhood of such use . . . ." held to "confer excessive substantive discretion on the licensing authorities").

In urging a contrary conclusion, i.e. that the authority vested in permit-issuing officials is appropriately circumscribed, the State maintains that this case is similar to *Thomas v. Chicago Park District*, which upheld the facial constitutionality of a city ordinance requiring individuals to obtain a permit prior to conducting any "event involving more than fifty individuals" in city parks. 534 U.S. at 318, 324-25. The ordinance at issue in *Thomas*, however, was more narrowly drafted than New York's Mass Gathering Law; the only "catch-all" provision that it contains states that the Park District may deny a permit if "the use or activity intended by the applicant would present an *unreasonable* danger to the health or safety of the applicant, or other users of the park." *Id.* at 319 n.1 (emphasis added). As the Plaintiffs argue, the Chicago ordinance's use of the word "reasonable" in conjunction with "danger to health or safety"

"creates an objective standard . . . [that] gives the permitting official guidance . . . and . . . gives a court a familiar and frequently-employed standard by which to test the official's determination." Pls'. Opp'n Memo. at 17. The Supreme Court accordingly found that the grounds for denying a mass gathering permit "are reasonably specific and objective, and do not leave the decision to the whim of the administrator." *Id.*

The State suggests that the Mass Gathering Law contains an "adequacy" requirement akin to the "reasonableness" standard contained in the ordinance at issue in *Thomas*. The law states that local authorities may "establish regulations with respect to such gatherings to provide for": "the furnishing of adequate undertakings to secure full compliance with the sanitary code and other applicable law," "adequate and satisfactory water supply and sewerage facilities," "adequate drainage," "adequate toilet and lavatory facilities," "adequate refuse storage and disposal facilities," "adequate sleeping areas and facilities," "adequate medical facilities," "adequate fire protection," and "such other matters as may be appropriate for security of life or health." Even assuming that "adequate" and "reasonable" are roughly synonymous, however, nothing in the Mass Gathering Law demonstrates that the catch-all clauses allowing officials to deny mass gathering permits when they determine that the gatherings cannot be held "without hazard to health and safety" are governed by the same adequacy standard.

In sum, the "catch-all" language in Public Health Law § 225(5)(o), and the corresponding verbiage of Section 7-1.40(b) of the Sanitary Code, give permit-issuing officials essentially unbridled discretion in reviewing, and ultimately deciding, mass gathering applications. For instance, a fair reading of Section 7-1.40(b) indicates that, as an outside limit,

-15-

a demand for information is authorized as long as the information sought bears on the issue of whether the proposed event may be held consistent with considerations "of life or health." That subjective determination is to be made by the administrator under the Mass Gathering Law. And, perhaps needless to say, either a failure to furnish materials demanded under this catch-all language, or a negative evaluation of materials that are furnished, would be likely to trigger denial of a mass gathering permit.

The specific provisions of the Mass Gathering Law that the Plaintiffs have shown are likely to be included in a permanent injunction as constitutionally impermissible are: "when it appears that such gathering [may be held] without hazard to health or safety," and "such other matters as may be appropriate for security of life or health," in Public Health Law § 225(5)(o); and "such other matters as may be appropriate for security of life or health," in Section 7-1.40(b) of the Sanitary Code.

E. *Plaintiffs __fail__ to demonstrate that the Mass Gathering Law is constitutionally infirm in any other respect.*

1. *Except as explained in Part D, supra, Plaintiffs have not shown that the Mass Gathering Law is constitutionally flawed because it authorizes the permit-issuing official to demand such plans, reports, and specifications as he or she deems necessary for a proper review of an application.*

As just explained, the Mass Gathering Law improperly authorizes the permit-issuing official to demand plans, reports, and specifications, concerning, *inter alia*, "such other matters as may be appropriate for security of life or health." 10 NYCRR 7-1.40(b). Accordingly, this portion of the opinion will address solely those demands which pertain to "adequate and satisfactory water supply and sewerage facilities, adequate drainage, adequate

toilet and lavatory facilities, adequate refuse storage and disposal facilities, adequate sleeping

areas and facilities, wholesome food and sanitary food service, adequate medical facilities,

insect and noxious weed control, [and] adequate fire protection. . . ." *Id.*

> The Plaintiffs complain that

> Section 7-1.40(b) provides a list of seven specific categories of information that must be contained in the "plans, reports and specifications" submitted with an application. Each of these categories is then reincorporated into subparts of the "engineering report" required by section 7-1.41(d). . . . Thus, the statute's discretionary authorization to require ***additional*** "plans, reports and specifications as the permit-issuing official ***shall deem necessary***" [for a proper review of an application] provides the official with unguided and unlimited power to require an applicant to do whatever that official believes is "necessary," including, in the case of Field Day, the imposition of onerous permit fees and other arbitrary conditions.

Pls.' Mem. Supp. of Motion for Preliminary Injunction at 17 (emphases in Plaintiff's briefing).

Obviously, a permit-issuing official cannot perform his or her function unless the

applicant furnishes plans detailing how required services are to be provided at the event site. The

Plaintiffs do not contend otherwise. Rather, the gravamen of their complaint as to this issue

seems to be that the administrator may ask for more than is necessary since both Sections 7-1.40

and 7-1.41(d) allude to plans being furnished. The argument that this purported overlap runs

afoul of the constitution is unpersuasive.

To begin with, and as a practical matter, excessive demands from an applicant's

perspective could arguably be made under either of the two regulations standing alone. There

is nothing to suggest that the adoption of both regulations escalates that risk. More importantly,

the implied predicate for the Plaintiffs' position is that "one size [should] fit all"; in other words, that Section 7-1.40(b) is surplusage given the more specific provisions embodied in several parts of Section 7-1.41(d). But the detailed standards in Section 7-1.41(d) are not coextensive with the myriad of problems that permit-issuing officials may encounter in evaluating various mass gathering applications. The broader, more general, and seemingly complementary language in Section 7-1.40(b) serves to fill that void.

In sum, the Court accepts that there is some overlap between Sections 7-1.40(b) and 7-1.41(d), but rejects the notion (except as noted in Part D, *supra*) that the statutory language pertaining to materials "deem[ed] necessary for a proper review" is facially unconstitutional.

2. *Plaintiffs fail to show that allowing a permit-issuing official to request assistance from any other state official is constitutionally suspect.*

The Plaintiffs complain that Public Health Law § 225(o)(5) empowers a permit-issuing official to request and receive "from all public officers, departments and agencies of the state and its political subdivisions such cooperation and assistance as may be necessary and proper." The Plaintiffs assert that this "complete absence of any standards or guidelines leaves the permit-issuing official free to pick and choose what events will receive public assistance and what events will not," and effectively gives the official "unfettered power to veto events by withholding the necessary public assistance . . . to a disfavored speaker or message." However, the Court will not consider this point here, because the Plaintiffs cite no authority to support their argument, and the State does not appear to address it at all.

-18-

3.      *The requirement that a permit applicant submit a "satisfactory" traffic control plan contains adequate guidelines to limit official discretion.*

The Plaintiffs dislike Sanitary Code Section 7-1.41(d)(2)'s requirement that all mass gathering permit applications be accompanied by an "engineering report" containing, in part, a statement from law enforcement officers certifying that any traffic control plan involving non-contiguous parking is "satisfactory." According to the Plaintiffs, "the decision as to whether a plan is 'satisfactory' is entirely subjective and discretionary," because this provision "contains no standards, no guidelines, no limits on the official's discretion, and nothing to inform the applicant what makes a traffic control plan 'satisfactory.' "

In the present case, however, the State makes a convincing argument that under a common-sense reading of the Sanitary Code, a traffic control plan is "satisfactory" if it includes "transportation arrangements from noncontiguous parking facilities to the site to fully serve all reasonably anticipated requirements at a rate of no less than 20,000 persons per hour." 10 NYCRR 7-1.41(d)(2). The Court finds this to be sufficiently "reasonably specific and objective" that at least facially, it does not clearly "leave the decision to the whim of the administrator." Accordingly, the Mass Gathering Law's reference to "satisfactory" traffic control plans is not constitutionally suspect.

4.      *The Mass Gathering Law's "permissive" language does not render it constitutionally infirm.*

The Plaintiffs argue that the Mass Gathering Law is facially defective because it is inherently "permissive," and nowhere explicitly states that once an acceptable permit application is submitted, it must be approved. However, as the State argues, under New York

rules of statutory interpretation, this is of negligible importance:

> The line between mandatory and directory statutes cannot be drawn with precision. Whether a given provision in a statute is mandatory or directory is to be determined primarily from the legislative intent gathered from the entire act and the surrounding circumstances, keeping in mind the public policy to be promoted and the results that would follow one or the other conclusion. In this regard, however, it is said that the legislative intent does not depend upon the language in which the intent is clothed, and the fact that a statute is framed in mandatory words such as "shall" or "must," is of slight, if any, importance on the question whether the act is mandatory or directory. Thus mandatory words may be interpreted in a merely permissive sense or vice versa."

McKinney's Statutes § 171, Comment (citations omitted).

As suggested in *Thomas v. Chicago Park District*, the permissive nature of an ordinance more often tends to further, not constrict, free speech, because "[t]he prophylaxis achieved by insisting upon a rigid, no-waiver application of the ordinance requirements would be far outweighed . . . by the accompanying senseless prohibition of speech." 534 U.S. 316, 325 (2002). As suggested by *Thomas*, to the extent that permissive provisions in a law may be applied to favor certain speakers over others, a more reasonable approach than striking the entire law from the outset is to deal with such a pattern of abuse when it appears. *Id.*

5. *The Mass Gathering Law need not impose deadlines or contain mechanisms for expedited judicial review.*

The Plaintiffs' final assertion is that the Mass Gathering Law is unconstitutional because it lacks various procedural safeguards: a deadline for the permit-issuing official's decision, a requirement that he explain the reasons for a permit denial, and a mechanism ensuring prompt judicial review. Thus, state the Plaintiffs, "an applicant could comply with all the

statutory requirements and the permit-issuing official could sit on the application indefinitely, effectively canceling the event, and the applicant would have no remedy." The State argues that content-neutral mass gathering laws need not impose specific deadlines on an official's decision or contain a specific review procedure, and that in any event an Article 78 proceeding would allow effective and prompt judicial review. The State is correct.

The First Amendment requires that both "expeditious judicial review" and a "specified brief period" of restraint prior to such review be contained in any licensing scheme regulating expressive activity based on its content, *Freedman v. Md.*, 380 U.S. 51, 58-60 (1965), or regulating an entire class of businesses based on their inherently expressive nature. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 224-27 (1990); *see also City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 771 (1988). But the Supreme Court has refused to extend these requirements to "a content-neutral permit scheme regulating speech in a public forum." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322 (2002). A licensing scheme that is " 'limited by its terms, or by nondiscriminatory practice, to considerations of public safety and the like' " is "a traditional exercise of authority [that] does not raise the censorship concerns that prompted [imposition of] the extraordinary procedural safeguards . . . in *Freedman*," and as noted earlier, need only "contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Id.* at 322-23 (quoting *Niemotko v. Md.*, 340 U.S. 268, 282 (1951) (Frankfurter, J., concurring)).

As already noted, the Mass Gathering Law is undisputedly content-neutral. And while it is clearly "broad enough to cover gatherings that are expressive," *see S. Or. Barter Fair*

*v. Jackson County, Or.*, 372 F.3d 1128, 1135 (9th Cir. 2004), it is not "directed to communicative activity as such, but rather to *all* activity," and thus need not contain the timeliness and appealability standards set out in *Freedman* and its progeny.

     E.      *The offending portions of the Mass Gathering Law may be severed for purposes of preliminary injunctive relief.*

Having preliminarily determined that certain portions of the Mass Gathering Law are facially unconstitutional, the next issue is whether the remainder of the law is severable from its invalid provisions.

Whether the unconstitutional portions of a state law can be severed from its valid portions, so that the remainder of the statute can be preserved, is a question of state law. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988). Under New York law, the standard for severance is "whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether." *People ex rel. Alpha Portland Cement Co. v. Knapp*, 129 N.E. 202 (1920), *cert. denied*, 256 U.S. 702 (1921) (Cardozo, J.). Then-Judge Cardozo instructed: "The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots." *Id*.

Cardozo further cautioned: "Our right to destroy is bounded by the limits of necessity. Our duty is to save unless in saving we pervert." *Id*. at 208. New York courts have thus tended to "apply severance doctrine liberally in order to save a statute," *801 Conklin Street Ltd. v. Town of Babylon*, 38 F. Supp.2d 228, 245 (E.D.N.Y. 1999) (citing *id*.), and "refrain from

invalidating an entire statute when only portions of it are objectionable." *Nat'l Adver. Co. v. Town of Niagara*, 942 F.2d 145, 148 (2d Cir. 1991) (citing *Alpha Portland Cement Co.*, 129 N.E. at 207)). This is particularly true when the law contains a severability clause, although the presence of one is not dispositive. *801 Conklin Street Ltd.*, 38 F. Supp.2d at 245 (citing *Town of Islip v. Caviglia*, 532 N.Y.S.2d 783, 794 (App. Div. 1988); and *U.S. v. Jackson*, 390 U.S. 570, 585 n. 27 (1968)).

"Courts that have refused to sever a statute typically have done so when 'the balance of the legislation is incapable of functioning independently [because] the valid and invalid provisions are so intertwined.' " *801 Conklin Street Ltd.*, 38 F. Supp.2d at 245 (quoting *Nat'l Adver. Co.*, 942 F.2d at 148). Where an invalid provision is "the core of" or is "interwoven inextricably through" an entire statute or regulatory scheme, "judicial excision of that provision to let the rest survive is inappropriate." *N.Y. State Superfund Coalition, Inc. v. N.Y. State Dep't of Envtl. Conservation*, 550 N.E.2d 155, 157 (N.Y. 1989).

In this case, New York's Public Health Law *does* contain a severability clause, which states in full:

> If any clause, sentence, paragraph, section or part of this chapter shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section, or part thereof directly involved in the controversy in which such judgment shall have been rendered.

McKinney's Public Health Law § 5000. This is a strong indication that New York's legislature would prefer to have the valid portions of the public health laws enforced after excision of any

unconstitutional portions. Further, there is no apparent reason why the balance of the Mass Gathering Law is incapable of functioning independently once stripped of the three portions that have been held objectionable here. Finally, public policy strongly weighs in favor of preserving as much of the Mass Gathering Law as is constitutional, since as the State suggests, any other outcome could severely impede New York's ability to protect public health and safety.

Accordingly, the three parts of the Mass Gathering Law identified in Part II.D, *supra*, shall be severed from the remainder of the law for purposes of the preliminary injunction to be granted to the Plaintiffs.

Finally, it should be noted that (1) the Defendants have not requested that the Plaintiffs be required to post a bond should their request for injunctive relief be granted, and (2) the Court has not required such a bond to be posted. Although Fed. R. Civ. P. 65(c) provides that "[n]o .. . preliminary injunction shall issue except upon the giving of security by the applicant," here "there has been no proof of likelihood of harm to the party enjoined." *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974). Under such circumstances, the Court may dispense with the security requirement. *Id.*; *see also* 11A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2954, at 292-93 (2d ed. 1995).

## CONCLUSION

For all of the reasons above, the Plaintiffs have established a likelihood that they will ultimately prevail in their facial attack on Section 225(5)(o) of New York's Public Health Law and Section 7-1.40 of New York's Sanitary Code promulgated thereunder. Accordingly, the

State's motion to dismiss the Plaintiffs' facial attack on the constitutionality of the Mass Gathering Law is DENIED, and Plaintiffs' motion for a preliminary injunction is GRANTED.

The named Defendants, as well as their respective representatives, agents, and employees, are hereby PRELIMINARILY ENJOINED from applying the Mass Gathering Law, as currently written, against the Plaintiffs pending further order of this Court or another court of competent jurisdiction. Instead, the Mass Gathering Law may only be applied in a manner consistent with this opinion, i.e., absent the severed language discussed herein.

**SO ORDERED.**

Dated:  Central Islip, New York
        September 30, 2005                    /s/_____
                                             Denis R. Hurley
                                             United States District Judge