UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FIELD DAY, LLC, f/k/a/NEW YORK MUSIC
FESTIVAL, LLC, AEG LIVE LLC f/k/a
AEG CONCERTS LLC,

       Plaintiffs         **MEMORANDUM & ORDER**

   -against-            Civil Action No. 04-2202

COUNTY OF SUFFOLK, SUFFOLK COUNTY
DEPARTMENT OF HEALTH SERVICES,
SUFFOLK COUNTY EXECUTIVE ROBERT
GAFFNEY, COMMISSIONER OF THE SUFFOLK
COUNTY DEPARTMENT OF HEALTH
SERVICES BRIAN L. HARPER, COMMISSIONER
OF SUFFOLK COUNTY POLICE DEPARTMENT
JOHN C. GALLAGHER, DIRECTOR OF SUFFOLK
COUNTY DEPARTMENT OF HEALTH SERVICES
ROBERT MAIMONI, CHIEF OF THE BUREAU OF
PUBLIC HEALTH PROTECTION BRUCE
WILLIAMSON, PRINCIPAL PUBLIC HEALTH
SANITARIAN ROBERT GERDTS, DEPUTY
SUFFOLK COUNTY ATTORNEY ROBERT
CABBLE, DEPUTY SUFFOLK COUNTY
EXECUTIVE JOE MICHAELS, SERGEANT
PATRICK MAHER OF THE SUFFOLK COUNTY
POLICE DEPARTMENT, THE TOWN OF
RIVERHEAD, RIVERHEAD CHIEF OF POLICE
DAVID HEGERMILLER and NEW YORK
STATE HEALTH COMMISSIONER ANTONIA
C. NOVELLO.

       Defendants.
----------------------------------------------------------------X


**APPEARANCES:**

**O'Melveny & Myers LLP**
Attorneys for Plaintiffs
7 Times Square
New York, New York 10036
By: Charles E. Bachman, Esq.
   Peter Obstler, Esq.
   B. Andrew Bednark, Esq.

**Christine Malafi, Suffolk County Attorney**
Attorneys for Suffolk County Defendants
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York
By:     Christopher A. Jeffreys, Esq.
        Susan A. Flynn, Esq.

**Smith, Finkelstein, Lundberg, Isler & Yakaboski, LLP**
Attorneys for Town of Riverhead
456 Griffing Avenue
P.O. Box 389
Riverhead, NY 11901
By:     Phil Siegel, Esq.

**Thomas C. Sledjeski & Associates**, **PLCC**
Attorneys for Riverhead Police Chief David Hegermiller
18 First Street
P.O. Box 479
Riverhead, New York 11901
By:     Thomas C. Sledjeski, Esq.

**HURLEY, Senior District Judge:**

    Plaintiffs Field Day LLC f/k/a/ New York Music Festival and AEG Live LLC

f/k/a/ AEG Concerts LLC (collectively "Plaintiffs" or "Field Day") commenced this action for

money damages and injunctive relief against the County of Suffolk and the Suffolk County

Department of Health Services (collectively the "County") and numerous County employees[1]

---

[1] The Individual County Defendants are Suffolk County Executive Robert Gaffney ("Gaffney"), Commissioner of the Suffolk County Department of Health Services Brian L. Harper ("Harper"), Commissioner of the Suffolk County Police Department John C. Gallagher ("Gallagher"), Director of the Suffolk County Department of Health Services Robert Maimone ("Maimone"), Chief of the Bureau of Public Health Protection Bruce Williamson ("Williamson"), Principal Public Health Sanitarian Robert Gerdts ("Gerdts"), Deputy Suffolk County Attorney Robert Cabble ("Cabble"), Deputy Suffolk County Executive Joe Michaels ("Michaels"), and Sergeant Patrick Maher of the Suffolk County Police Department ("Maher"). Parenthetically, the Court notes that Robert Maimone's name is variously spelled as Maioni, Maimoni, and Maimone; the Court will use "Maimone" as it is the spelling used in his deposition.

(the County employees named as defendants are collectively referred to as the " Individual County Defendants" and the Individual County Defendants and the County are collectively referred to as the "County Defendants"), the New York State Health Commissioner, the Town of Riverhead ("Riverhead") and the Riverhead Police Chief. Plaintiffs allege that they were unlawfully denied the right to stage a weekend-long concert festival within the Town of Riverhead when the County refused to issue a mass gathering permit. Presently before the Court is Plaintiffs' motion for sanctions against the County Defendants due to the alleged spoliation of evidence. For the reasons set forth below, the motion is granted in part and denied in part.

## Background

### I.      The Nature of the Action

According to the Second Amended Complaint, in June 2002 Field Day began efforts to promote and produce a two-day music festival featuring leading rap, hip-hop, and rock artists which was to take place June 7-8, 2003 (the "Festival"). After considering other locations, Field Day entered into a "License Agreement for Outdoor Event" with the Town of Riverhead's Community Development Agency. Under the terms of the License Agreement, Field Day paid $150,000 to lease roughly 1,000 acres of the Calverton Enterprise Park from May 5, 2003 to June 22, 2003 for the purposes of holding the Festival. Field Day expected the festival to draw between 35,000 and 40,000 people. Under the License Agreement Field Day was to be responsible for, among other things, securing a "Mass Gathering Permit," which according to the agreement was a "Necessary Approval" and if Field Day was unsuccessful in obtaining the Necessary Approvals, the agreement would terminate and the obligations of the parties would become null and void.

3

Over the next several months, Field Day worked with Riverhead and Suffolk County in order to obtain the mass gathering permit. On May 27, 2003 the mass gathering permit was denied. On June 3, 2003 the County moved in New York State Supreme Court for an injunction to preclude Field Day from holding the Festival. On August 21, 2003, the County received a notice of claim[2] from Field Day. The instant action was commenced on May 26, 2004.

Field Day alleges that Riverhead and Suffolk County, through their employees, unlawfully failed to approve its application in that the failure to issue the permit was driven by "'political' decisions by 'upper level' Suffolk county officials," a "dislike for rock music concerts and their fans," and/or "the active involvement and political influence of Clear Channel Entertainment, Inc., a media conglomerate that is [Field Day's] largest competitor in the concert promotion industry." (Second Amended Complaint ¶ 2.) The Second Amended Complaint alleges violations of First Amendment free speech rights and common law claims including tortious interference with contractual relations, tortious interference with business relations and prima facie tort. With respect to all the Individual County Defendants except for Harper,

_____

[2] New York General Municipal Law 50-e requires that a plaintiff must file a notice of claim prior to commencement of a tort action against a municipality, and must serve the notice of claim within ninety (90) days after the claim arises. N.Y. Gen. Mun. Law § 50-e. New York County Law §52 requires that a notice of claim in accordance with section 50-e be served prior to an action against a county "for damage, injury or death, or for invasion of personal or property rights, of every name and nature ... and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees . . . ." N.Y. County Law § 52(1).

Plaintiffs' claims are asserted against them at least in their individual capacities.[3]

## II.    The Spoliation Allegations

Field Day maintains that the County has "systemic[ally] and flagrant[ly] fail[ed] to preserve substantial amounts of documentary evidence." (Pls' Mem. in Supp. at 2. ) In support of this conclusion, Field Day alleges that: (1)"[t]he County Attorney's Office never implemented a litigation hold to prevent its employees from destroying evidence exclusively within the county's control and custody since the litigation period commenced;" (2) "[t]he County has made no attempt to search for relevant documents that it confirms exist among the over 82,000 boxes of documents archived in the county's records retention facility;" (3) [t]he County has destroyed internal and external e-mail communications, electronic word documents, calendars, and other data relevant to the claims and defenses in this case by systematically erasing this information by "wiping" or "ghosting' in this case the computer hard drives of its former county employees, including the individual County Defendants in 2004, months after the litigation period commenced;" and (4) "[a]s late as October 2006, former County Health Department officials "purged" and destroyed hard document files containing evidence that directly supports Plaintiff's claims . . . ." (*Id.*)

---

[3] It is unclear from the Second Amended Complaint whether the claims against Gaffney, Gallagher, Maimone, Williamson, Cabble, Michaels, and Maher are also asserted against them in their official capacities. As to these individuals, immediately after the allegation that each was employed by the County and was acting in the course and scope of his employment, is the statement that each "is sued in his individual capacity." (Second Amended Complaint ¶¶ 14, 16-18, 20-22.) The allegations that these individuals were acting in the course and scope of their employment would seem to suggest they are being sued in their official capacities. However, with respect to Gerdts it is alleged he was acting in the course and scope of his employment and "is sued in his individual and official capacities." (*Id.* ¶ 19.) As to Harper the Second Amended Complaint states he is "sued in his official capacity as the Commissioner of the [Suffolk County Department of Health Services]." (*Id.* ¶ 15.)

To remedy the alleged discovery abuses, Plaintiffs seek a finding that the County Defendants committed spoliation of evidence and request the following relief: "(1) striking the answers of Defendants Gaffney, Michaels, Gallagher, Maimone and Cabble; (2) striking the answer of all the County Defendants on the Civil Rights Conspiracy Claim; (3) striking the affirmative defenses of the County Defendants, including qualified immunity; (4) allowing the Court and/or the Jury to draw an adverse inference on all disputed issues of fact that relate to the destroyed evidence; (5) granting Plaintiffs leave to amend their Complaint to add additional individual county defendants involved in or implicated by the document destruction and discovery abuses; and (6) any other relief the Court deems just and reasonable." (Pls.' Mem. in Supp. at 3.)

The County does not dispute that a litigation hold was not implemented in this matter. (*See* Feb. 27, 2007 Tr. at 45.) Nor does it dispute that with the change in administration in January 2004, the hard drives of departing County personnel were wiped clean. County Defendants maintain that no spoliation has occurred and that there is no evidence that documents or e-mails relevant to Plaintiffs' claims are missing. According to the County Defendants, the County's document retention system is a paper based system which required that electronic documents such as e-mails be printed out and maintained in paper form. In that paper form, all e-mails and other documents relevant to the claim in this case have been produced. They further argue that no basis to add spoliation claims against new parties has been asserted, nor does any such basis exist.

In addressing this matter, the Court will proceed in the following manner. First, it will discuss the law applicable to spoliation motions generally. It will then discuss the evidence

put before it in connection with the instant motion and whether that evidence supports the imposition of sanctions and if so, the nature of the sanctions to be imposed.

**Discussion**

## I. The Law of Spoliation

"Spoliation is defined as 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Tri-County Motors, Inc. v. American Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 176 (E.D.N.Y. 2007), *aff'd*, 301 Fed. Appx. 11 (2d Cir. Nov. 24, 2008) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999)). A party seeking sanctions for spoliation of evidence "must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citing *Byrnie v. Town of Cromwell,* 243 F.3d 93, 107-12 (2d Cir. 2001)).

The duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed'l Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). It is now established that "'once a party reasonably anticipates litigation, it must suspend its routine document retention policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.'" *Treppel v. Biovail,* 249 F.R.D. 111, 118 (S.D.N.Y. 2008) (quoting *Zubalake* v. UBS Warburg LLC ("*Zubalake IV*") 220 F.R.D. 212, 218 (S.D.N.Y. 2004). A party

7

"must retain all relevant documents (but not multiple identical copies) in existence at the time the duty to preserve attaches." *Zubalake IV*, 220 F.R.D. at 218. *See also Zubalake v. UBS Warburg LLC* ("*Zubalake V*") 229 F.R.D. 422, 435 n. 88 (S.D.N.Y. 2004) ("Had these directives been followed, UBS would have met its preservation obligations by preserving one copy of all relevant documents that existed at, or were created after, the time when the duty to preserve attached.")

If there was a duty to preserve, the question becomes whether evidence was destroyed with a culpable state of mind. *See De Espana v. American Bureau of Shipping*, 2007 WL 1686327 * 3 (S.D.N.Y. 2007) (citing *Fujitsu,* 247 F.3d at 436), *reconsideration denied*, 2007 WL 3229147 (S.D.N.Y. Oct. 31, 2007), *objections overruled*, 2008 WL 3851957 (S.D.N.Y. Aug. 18, 2008). The degree of culpability bears on the severity of sanctions. *Id.* The culpability "prong of the spoliation test can be 'satisfied by showing that the evidence was knowingly . . . or negligently destroyed.'" *ACORN v. County of Nassau*, 2009 WL 605859, * 4 (E.D.N.Y. Mar. 9, 2009) (quoting *Residential Funding*, 306 F.3d 99, 108 (2d Cir. 2002)).

The last element of a spoliation claim requires the innocent party to establish that the destroyed materials were relevant evidence and would have been favorable to it. *Residential Funding*, 306 F.3d at 109; *ACORN*, 2009 WL 605859, *5. "In this context, the term 'relevance' 'means more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence.'" *Id.* (quoting *Residential Funding*, 306 F.3d at 108-09). Relevance and prejudice may, but need not be, presumed when the spoliating party acted in bad faith or in a grossly negligently manner. *See Residential Funding*, 306 F.3d at 109 ("[A] showing of gross negligence in the destruction or untimely production of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party."); *ACORN*, 2009 WL

605859, *4 ("While a showing of gross negligence may, in some circumstances, support a claim that missing evidence was relevant to the movant's case, the circumstances in this case do not require such a determination.") *Treppel*, 249 F.R.D. at 121-122 ("While it is true that under certain circumstances a showing of gross negligence in the destruction or untimely production of evidence will support inference, the circumstances here do not warrant such a finding, as the defendants' conduct does not rise to the egregious level seen in cases where relevance is determined as a matter of law) (internal quotations omitted). Relevance may also be demonstrated by the submission of "extrinsic evidence tending to demonstrate that the missing evidence would have been favorable to it." *Chan v. Triple 8 Palace, Inc.*, 2005 WL 1925579, *8 (S.D.N.Y. Aug. 11, 2005).

## II. The Propriety of Sanctions in this Case

In addressing the propriety of sanctions in this case, it is important to note that Plaintiffs seek sanctions not only against the County for the alleged acts of spoliation committed by its employees but against certain of the Individual County Defendants, which defendants Plaintiffs seek to hold liable in their individual capacities. Hence, the Court must address the elements of spoliation not only as to the County acting through its employees but as to each Individual County Defendant.

The first issue to be addressed is when the duty to preserve arose. Plaintiffs argue that the duty arose, at the latest, on June 3, 2003 when the County commenced an action in New York State Supreme Court seeking to enjoin Field Day and the Town of Riverhead from holding the festival. Alternatively, they point to August 21, 2003 when Plaintiffs served the County with a notice of claim, as the date said duty arose. (Pls.' Mem. in Supp. at 5-6. ) In its papers, the

County takes the following position: (1) as Plaintiffs have not identified any document that was actually despoiled, "an analysis of whether or not the duty had attached as to that documentation at the time it was destroyed is impossible"; (2) even if the County's own document retention policy supplied the duty to preserve records, plaintiffs must still prove the other elements of the spoliation claim; and (3) the events took place during 2003 at a time when the law governing the duty to preserve electronically stored information was a "grey area." (County's Opp. Mem. at 7.)

The County's first two arguments need not detain the Court for long. It is certainly not inappropriate to determine when the duty to preserve arose and then look at whether evidence was despoiled after that date. Moreover, it is a given that all elements of a spoliation claim must be fulfilled. As to the third argument, it is more appropriately addressed in connection with culpable state of mind.

Although the obligation to preserve evidence commonly arises when the suit has already been filed, it can arise earlier "when a party should have known that the evidence *may* be relevant to future litigation." *Kronish v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998) (emphasis added). In the present case, the County was put on notice of the potential for future litigation when it received Field Day's notice of claim and its duty to preserve arose on that date if not before.[4] The Court is unpersuaded by the County's suggestion, at oral argument, that the date of

---

[4] The County's duty to preserve may well have initially arisen at or about the time it decided to initiate the suit to enjoin Field Day and Riverhead from holding the festival. However, the record on this motion is unclear as to what transpired with that action. For example, that action may have terminated in some fashion once the injunction was secured and before the County was served with Field Day's notice of claim. If that was the case, then perhaps the duty to preserve was extinguished for a period of time. However, once the notice of claim was received, the County should have known that documents regarding the mass gathering

receipt of the notice of claim is inappropriate because that it receives thousands of claims a year while the percentage of notices that result in actual lawsuits is small. (Tr. at 61.) That the County proceeded to examine, under oath pursuant to N.Y. Gen. Mun. Law § 50-h,[5] representatives of Field Day and the Town of Riverhead upon receipt of the notice of claim warrants the conclusion that the County should have known at that time that documents relating to Field Day's application for a mass gathering permit may be relevant to future litigation.

When the duty to preserve arose on behalf of the individual County Defendants is another matter. The notice of claim is required to be served only upon the County not individual employees thereof. *See Messins v. Mazzeo*, 854 F. Supp. 116, 145 (E.D.N.Y. 1994). The notice of claim is not before the Court; nor do Plaintiffs point to any evidence as to when, or even if, the Individual County Defendants learned of or were served with the notice of claim.[6] The only evidence with respect to the Individual County Defendants is Gerdts' testimony that he understood shortly after the denial of the permit that there would be litigation, although it is not clear from the testimony submitted by Plaintiffs whether he is referencing the litigation brought by the County or litigation to be commenced by Plaintiffs. In any event, sanctions against Gerdts are not sought. (*See* Pls.' Reply at 6 n.3.) Given the dearth of evidence in the record identified

---

permit process "may" be relevant to future litigation.

[5] N.Y. Gen. Mun. Law § 50-h provides, in pertinent part, that "[w]henever a notice of claim is filed against a . . . county, . . . the . . . county . . . shall have the right to demand an examination of the claimant relative to the occurrence and the extent of the injuries or damages for which claim is made, which examination shall be upon oral examination . . . ."

[6] The Court notes that the allegation in the Second Amended Complaint that Plaintiffs served notices of claims on the Individual County Defendants (¶ 6) is denied. *See* Answer [of County Defendants] to Second Amended Complaint ¶ 4.

by the parties on this point, the Court concludes that the Individual County Defendants' duty to preserve did not arise until the instant action was commenced in May 2004.

Having determined when the duty to preserve arose, the question becomes whether Plaintiffs have demonstrated that documents were destroyed after the duty to preserve arose. The answer requires that Court to summarize the materials submitted by the parties, which the Court, following the lead of the parties, shall proceed to do witness by witness. In order to provide the appropriate backdrop, the Court begins with the testimony of the Director of Management Information, Douglas Miller.

<u>Douglas Miller</u> - According to Plaintiffs, Miller's testimony supports their spoliation claim in that "Miller testified that: (1) no litigation hold has ever been implemented for this case, (2) the County Defendants and other County employees violated Suffolk County's law governing records retention, (3) the County wiped the hard drives of computers belonging to County Defendants and witnesses, and as a result, (4) all e-mails sent or received during the relevant period were either permanently destroyed or removed to inaccessible media." Ex. A to Bednark Decl. at 1.

Miller became Director of Information Management sometime in October 2006. (Miller Dep. at 6.) He testified he was unaware whether a litigation hold has been issued for the case at bar. (*Id.* at 18.) According to Miller, the County's document retention system is paper based. Specifically, with to respect to e-mails, "[t]he County's policy has been to print out any pertinent e-mails and then file them as paper, so that's how they would be preserved." (*Id.* at 24.) According to Miller, every County employee has a responsibility to maintain all their e-mails and all their documents relating to any business matter by printing them out and then filing them.

12

(*Id.* at 38.) While e-mails are preserved on back-up emergency tapes, the County has no way of searching those tapes without purchasing a system to restore the tapes and buying e-mail archiving software to go through the tapes. (*Id.*) If e-mails were moved from the inbox to a personal archive file, they are not backed-up on the emergency tapes. Thus, if e-mails were archived and not printed out and the drive the e-mails were on was wiped clean, there is no back-up, i.e. the e-mails would not be on the emergency back-up tapes. (*Id.* at 27.) Miller also testified that because of size limitations of inbox storage space, " a warning message is sent to [the user] and they have to clean out their inbox either by printing out pertinent e-mails and saving or deleting e-mails from the inbox. Until they do that, they will not be able to send or receive e-mails." (*Id.* at 86.)

With respect to the then County Executive Gaffney,[7] Miller testified that his calendar was electronic and it was a "transitory" document. In other words, the calendar was deleted on a daily basis as a new one was created. (*Id.* at 66.) The calendaring function on Microsoft Outlook was not used. According to Miller, "they weren't big tech users back then." (*Id.* at 71.) With respect to hard copies of Gaffney's calendars, Miller testified that they were thrown out "at the end of [each] day." (*Id.* at 66.)

Miller testified that he did not know if the County had made an effort to look for responsive documents in the County's records retention facility archives. (*Id.* at 148.) Nor did he know if the County had undertaken any search to find "all documents related and responsive to this particular legal action either in the County Attorney's Office or in the Clerk's Office . . . ."

---

[7] Miller was a systems analyst in the County Executive's office from 2000 to 2004. (Miller Dep. at 7-8.)

(*Id.* at 138.)

As to County employees who (1) were involved in the permitting process for the Festival, (2) used computers to generate documents or send or receive e-mails, and (3) whose hard drives were wiped after August 21, 2003, Miller's testimony supports that the County spoliated evidence by wiping their hard drives. Given his lack of knowledge regarding any search for documents, in the County's archives or otherwise, his testimony does not support spoliation by the County in that regard.

Robert Cabble - Cabble, a former Deputy County Attorney, testified that he personally did not undertake any steps to preserve electronic documents regarding the Field Day festival after June 2003. (Cabble Dep. at 12). He further testified that while he personally did not have a practice regarding the preservation of electronic documents, he had a practice of retaining hard copies, to wit, his practice was to make copies of e-mails and place then in the pertinent file. (*Id.* at 16.) With respect to the Field Day festival, he stated that he had a file that "dealt with mass gathering research" and the documents produced to Plaintiffs at his deposition "is everything I had been given or received with respect to the mass gathering permits at issue . . . ." (*Id.* at 16-17.) Although Cabble's hard drive was wiped clean when he left the County with the change in administration in January 2004, given his testimony that he maintained hard copies of electronic communications and documents, as well as the absence of evidence that he was aware his hard drive would be wiped upon his departure, the Court finds Plaintiffs have failed to establish that Cabble, who is individually named as a defendant, spoliated evidence. *Cf. Zubalake IV*, 220 F.R.D. at 218 (A party "must retain all relevant documents (but not multiple identical copies) in existence at the time the duty to preserve attaches."); *see also* Fed. R. Civ. P.

14

34 (2006 Advisory Committee Note) ("If the form of production is not specified . . . the responding party must produce electronically stored information either in a form or forms in which it is ordinarily maintained or in a form or forms that is reasonably usable.") Any spoliation resulting from the wiping of his hard drive is attributable solely to the County.

Plaintiffs also maintain that although county attorneys record their time Cabble did not provide a single itemized entry regarding time spent on Field Day, despite testimony of his involvement, and refer the Court to a document which appears to be Cabble's time accounting records for the period April 1 to June 30. This record shows no detailed time accounting for any matters Cabble may have worked on. Indeed, the entries merely reflects that Cabble spent seven hours each working day on what he identified under the heading "case name" as "admin." Absent is any testimony that Cabble actually kept more detailed time entries or even any testimony regarding how county attorneys were required to keep their time and if the requirements differed depending on the type of work performed.[8] Given the absence of such evidence, the Court declines to find spoliation by either the County or Cabble individually based on the absence of detailed entries.

Robert Gaffney - Gaffney, the former Suffolk County Executive testified that he did not communicate by e-mail, did not maintain files, and when he met with senior staff there were no written agenda and no notes taken. It was his practice to communicate orally. (Gaffney

---

[8] For example, while a county attorney who handles litigation might be expected to keep detailed time records so as to support a fee application, such detailed records might not be required of county attorneys in other divisions.

Dep. at 36, 37, 40, 132, 133, and 135.)[9]  Plaintiffs point to testimony from Peter Scully, the former Deputy County Executive for Administration, that Gaffney's administrative assistant would circulate weekly a copy of Gaffney's schedule, which Scully testified he discarded at the end of the week.  Scully did not know whether the schedules were typed by hand or whether they came off a computer. (Scully Dep. at 10-11.)  Plaintiffs have failed to show that Gaffney, who is a named defendant, spoliated any evidence.  The Court credits the testimony of Miller that Gaffney's calendar was "transitory" and with a new calendar overwriting the old.   Moreover, there is no evidence that Gaffney knew that the hard drive of his assistant would be wiped when she left the County.   Any spoliation that occurred from the wiping of his assistant's hard drive is attributable solely to the County.

　　　　Dr. Jean Alicandro - In support of the claim that documents were spoliated, Plaintiffs rely upon the deposition testimony of Robert Delagi, former Chief of Prehospital Medical Operations, which they contend supports that in or "about October 2006, upon leaving her position with the County's Department of Health Services Dr. Alicandro 'purged' all of her files, including task entries created by Delagi in his role as permit review official for EMS ingress and egress issues related to Field Day.  These documents are destroyed and cannot be recovered."  (Ex. A to Bednark Decl. at p. 1.)   Delagi's actual testimony was as follows:

> Q.　　. . . Is it possible then that the handwritten notes that related to the time that you submitted to Dr. Alicandro are no longer in your files because they were destroyed?
> A.　　Yes.
> Q.　　Is it possible that Dr. Alicandro would have files that relate to this event?

_____

[9]  The Court notes that Gaffney's testimony that most communication occurred orally is consistent with Miller's testimony that in June 2003 "they weren't big tech users."

| A. | Unlikely. |
|---|---|
| Q. | Why do you say that? |
| A. | She has left county service and she has purged her files of anything that was not, you know, required to be saved. |
| Q. | When did she leave County service? |
| A. | October 20th of this year [2006]. |
| Q. | And she went through, to the best of you understanding, and purged her files? |
| A. | Yes. |
| Q. | And do you know whether she may have purged documents that related to this event? |
| A. | Most likely. |

(Delagi Dep. at 174-75.)

Delagi's testimony does not appear to be based on first hand knowledge and amounts to nothing more than speculation and does not support a finding that the County, through Dr. Alicandro, spoliated evidence in October 2006.

Dr. Mermelstein - Dr. Mermelstein, Former Acting Commissioner of the Suffolk County Department of Health Services, testified that "with respect to her understanding that she was going to get served" she does not recall being contacted by anyone from the County Attorneys office and instructed to preserve and/or retain documents; and "she did not receive request for e-mails that she may have archived" (Mermelstein Dep. at 125-26, 131). Plaintiffs maintain that as a result of the wiping of her hard drive, these e-mails were destroyed.

However, Mermelstein testified in response to a question about whether, at the time the documents in support of the County's lawsuit were being prepared, she gave any instructions regarding the preservation of documents and electronic communications relating to the denial of the Field Day permit, that she had her secretary make a copy of the file "for [her]self and for the files." (*Id.* at 32.) In view of this testimony, the Court finds that Plaintiffs have not

17

sustained their burden of demonstrating that the County, through Dr. Mermelstein, engaged in spoliation.

John Gallagher - Plaintiffs maintain that Gallagher, Former Commissioner of the Suffolk County Police Department, was never asked to preserve e-mail communications or documents relating to this matter and as a result of the wiping of his hard drive in January 2004, "information and e-mails are no longer recoverable." ( Bednark Decl. at 2.) However, Gallagher testified that he did not send any e-mails in 2003 regarding Field Day's festival, he never communicated by e-mail to the County Executive's office while he was commissioner, and he never instructed his secretary to send e-mails on his behalf. (Gallagher Dep. at 103, 104, 109, 111.)[10] He also confirmed that when he left the County Police Department, he took some of his files concerning the Field Day festival and both that file and the files he left were produced in this litigation. (*Id.* at 122-23.) With respect to Plaintiff's reliance on Gallagher's testimony that "he got rid of handwritten notes" regarding the permit, the testimony is that he threw out these handwritten reminder notes once he "no longer needed them to remind" himself. The import of this testimony is that the notes were thrown out shortly after they were made, most likely before the duty to preserve arose. Plaintiffs have not sustained their burden of demonstrating that Gallagher, either individually or as a representative of the County, failed to preserve his files

---

[10] Plaintiffs also point to Gallagher's testimony that all e-mails he received would go through his secretary (Gallagher Dep. at 39) and that Gallagher was on an "internal e-mail distribution list for matters relating to fee requirements under the Mass Gathering Permit." (Ex. A1 to Bednark Rep. Decl. at 3.) Plaintiffs fail to direct the Court's attention to evidence that Gallagher's secretary left the County resulting in the wiping of her hard drive. Thus, while documents may not have been produced, there is insufficient evidence to support finding their destruction. Assuming their destruction, there is no evidence that Gallagher knew that the hard drive would be wiped.

after the duty to preserve arose.

Patrick Maher - Plaintiffs assert that the wiping of Maher's hard drive in September 2004 resulted in the destruction of e-mails. Maher testified that as far as he knew the e-mails were preserved on the computer; he was never told how long e-mails stay on the computer system and he never saved them to personal archives; and "there were probably e-mails that weren't provided because they weren't in the computer." (Maher Dep. at 85, 89, 127-28.) There is no evidence that Maher knew his hard drive would be wiped upon his departure. While Maher's testimony could support that documents were lost as a result of the wiping of the hard drive, it can also support that the e-mails were lost as a result of being automatically deleted by the system, which deletion could have occurred before the duty to preserve arose. As the evidence permits either inference and the burden is on Plaintiffs, the Court finds Plaintiffs have not sustained their burden that Maher, named as a defendant, destroyed any e-mails after the duty to preserve arose. The Court's conclusion is bolstered by Maher's testimony that he received e-mails because he was on a "routing list," together with the evidence that e-mails on that routing list have been produced.

Frederick Webber - In support of the spoliation claim Plaintiffs point to the testimony of Webber, who Plaintiffs describe as the "Suffolk County Police Department's Commanding Officer of the Information Technologies Section", that he is not aware of any document retention policy for the Suffolk Police Department and that hard drives are wiped when personnel leave. Absent from Plaintiffs' presentation is any evidence as to what Maher's duties were and when he held his position. This absence leads the Court to give no credence to the fact that he was unaware of any document retention policy of the Police Department and finds

his testimony less than compelling support for a finding that documents were destroyed as a result of the absence of a document retention policy. Indeed, other testimony presented supports that the County did have a document retention policy. (Miller Dep. at 22, 53, 57, 63, 145.)

Eric Kopp - According to Plaintiffs, Kopp, the former Chief Deputy of the County Executive's Office, "was not asked to look for documents relevant to this litigation, and when he left the County at the end of 2003 he took his calendar with him and discarded it after two years." They also maintain that his e-mails and other electronic data were destroyed when his computer drive was wiped. Finally, they argue that Kopp was the recipient of a letter from Plaintiffs' competitor requesting that the Field Day event not be permitted to take place and "despite statements that he received the letter to a newspaper, the County cannot locate the letter and Kopp has no recollection of communications with anyone about Field Day." (Ex. A to Bednark Decl. at 4.)

Kopp's deposition testimony confirms that he spoliated evidence when he destroyed the calendar he maintained (as opposed to the calendar maintained by his secretary) at a time when there was a duty on the County's part to preserve. With respect to the wiping of his hard drive, Plaintiffs have not established that it resulted in the destruction of any documents. The testimony cited to this Court does not address whether he generated or received e-mails or other electronic data.

With respect to the letter from Field Day's competitor Clear Channel Communications, a copy of which is in Plaintiff's possession, it appears that such a letter was probably received by the County. However, according to Kopp's testimony, while he may have known such a letter was received, he would not have actually received it. Thus, while the

County's inability to locate the letter allows this Court to conclude that it was spoliated by the County, the Court cannot conclude that Kopp was the County employee responsible for the spoliation.

   <u>Robert Gerdts</u> - Although Gerdts, the Principal Public Health Sanitarian, testified he had no recollection of a litigation hold being issued for documents, he testified that he expected litigation and therefore save hard copies of documents. With respect to e-mails he testified that "every single e-mail that he received or sent concerning this litigation or the events underlying it" that were not privileged were produced as he had created a personal archive. (Gerdts Dep. at 48-50.) These e-mails and documents were provided to the County Attorney's office on a series of thirteen diskettes and all of the entries on the diskettes were printed and provided to counsel. (Jeffreys Decl. at 8.) For the foregoing reasons, the Court concludes that Field Day has not sustained its burden of demonstrating that any of Gerdts' files were spoliated by Gerdts as an employee of the County.[11]

   <u>Robert Maimone</u> - It appears to be undisputed, based on Maimone's deposition testimony, that he maintained files and e-mails relating to Field Day's mass gather permit application and that he left those files behind when he left his position in January 2004. Plaintiffs maintain that they never "received those files because the County destroyed both the electronic and hard copy e-mails." (Ex. A to Bednark Decl. at 2.) The County maintains that Maimone "recalls that the entirety of his communications concerning Field Day event being approximately ten (10) e-mails." (Jeffreys Decl. at 13.)

---

[11] Although Gerdts is named as a defendant, as earlier noted by the Court Plaintiffs do not seek sanctions against Gerdts.

Maimone testified at his deposition as follows:

Q. So you have not reviewed any of those records prior to this deposition?

A. There were not any records to review.

Q. There were not any records to review because the County Attorney –

A. The County Attorney did not have them.

Q. When did you make that call?

A. I would say last week.

Q. . . . Let me ask you this, how many files do you think there were of hard copy documents?

A. Very few. Most of my correspondence on a matter like this would be E-mails on my PC in the office. There would be E-mails on my PC in the office. With the Outlook E-mail system I would set up folders for issues that I thought had level of import.
. . . If it was an e-mail from somebody I would put it in there. If it was an e-mail that I sent to somebody I would put it in there, if it was just some issues that I wanted to insure that I could recollect, I would type it up and put it in there. So it was primarily an electronic file.

. . .

Q. . . . Do you know ballpark whether there were more than for example ten E-mails that you may have sent and/or received that related to this matter?

A. That is probably a fair number . . . . There may have been more, but I just don't remember.

Q. But you think there were about ten?

A. Well how do you describe ten . . . .

(Maimone Dep. at 15-17.)

The Court finds that Plaintiffs have sustained their burden of demonstrating that there was spoliation of Maimone's records relative to the permit for the Festival. Even if Maimone only sent and received ten e-mails, which itself is not as clear as Defendants portray, unaccounted for are the entries he testified he made into his computer "if it was just some issues that [he] wanted to insure that [he] could recollect." (*Id.* at 15.) The spoliation, however, cannot

22

be attributed to Maimone personally as there is no evidence that he knew his hard drive would be wiped.

Joseph Michaels - With respect to Michaels, the Former Deputy County Executive for Public Safety, the spoliation allegation is premised on his not having been asked to search for documents and the wiping of his hard drive when he left the County Executives Office sometime in 2003. Plaintiffs have failed to sustain their burden to show spoliation of Michaels' records either by him or by the County. It is unclear whether Michaels' departure from the County Executive's office and the concomitant wiping of his hard drive occurred after August 21, 2003 when the County's duty to preserve arose. Also Michaels testified at his deposition that he attended meetings with respect to the permit, he did not take notes, he was not sure that he ever had any files with respect to Field Day and he did not think he used e-mail with respect to Field Day. (Michaels Dep. at 18, 27, 30-32.)

Robert Delagi - As to Delagi, former Chief of Prehospital Medical Operations, Plaintiffs rely upon the absence of any direction to save e-mails and his testimony as to the possibility that e-mails were not produced.

Delagi testified at his deposition as follows:

Q.    Did you receive or send any E-mails with respect to the
      Field Day mass gathering permit?
A.    Yes.
Q.    Did you produce those E-mails here today?
A.    Yes.
Q.    Did you produce all the E-mails that you may have had
      received or sent regarding the Field Day mass gathering
      permit here today?
A.    I produced all the E-mails that I had in my possession.
Q.    Do you believe there were other e-mails that you may have
      received that you do not have in you possession either

23

because they were deleted off the server or because they are in some other place that you were unable to reach?

A.      My belief is that I have everything – that I have included everything that I have since my typical practice is to put hard copy in file so that I have referenceable material.

Q.      So your typical practice with respect to permitting applications is when you receive an E-mail that relates to a particular permitting application you actually print the hard copy?

A.      Yes.

Q.      Then you put it in the file for that particular application process, application – withdraw that. Your practice is to, if you receive an E-mail that relates to a permit application, you print the hard copy and then put it in a file that relates to that permit application?

A.      I print the relevant ones, yes. Sometimes we have months of planning and not everything is relevant. But certainly relevant ones.

Q.      Who decides whether something that you believe is relevant or not relevant, is that a decision you make?

A.      I decide that.

Q.      So it is possible that there are E-mails that you have determined that are not relevant that you have not produced here today; that you have determined are not relevant, but that do relate to the Field Day event?

A.      Yes, it is possible.

. . .

Q.      With respect to permitting applications and public function type events, mass gathering, you don't have a habit of creating personal folders.

A.      No.

Q.      Do you know what happens to E-mails relating to those types of events that stay on your server, even if you have printed hard copy, what happens to the electronic copies of those E-mails, if they are not put in your personal archives?

A.      I am probably responsible to delete them at some point because we have mailbox sizes attached to the Microsoft Outlook program, and when the – when I can no longer send or receive e-mail because the mailbox is full I delete things that are no longer relevant to me.

Q.      Do you think you deleted E-mails with respect to public function permits or mass gathering permit applications that were made in 2003?

| | |
|---|---|
| A. | It is possible. |
| . . . | |
| Q. | So you were aware after the permit was denied that the Commissioner was planning to file a lawsuit to enjoin the event from going forward without a permit? |
| A. | No. I was aware that there was litigation. I did not know who initiated it. |
| Q. | Again just so the record is clear, when you became aware of litigation did you take any steps or anything to preserve any documents that might be relevant to that litigation? |
| A. | Yes, I did. |
| Q. | What did you do? |
| A. | I kept my binders, I kept my folders with handwritten notes, and I am confident that that information details my involvement in the planning aspect of the microcosm of EMS as it relates to the bigger event. |
| . . . | |
| Q. | Other than your handwritten notes did you review your E-mails to see if you had any E-mails that were relevant to that as well? |
| A. | I did not. |
| Q. | And again you don't know whether or not some of those e-mails may or may not have been deleted; is that correct? |
| A. | That is correct. |

(Delagi Dep. at 28-35.)  Based on the foregoing deposition testimony, the Court finds Plaintiffs

have not met their burden of showing Delagi, a named defendant, spoliated any documents.

Given it was Delagi's practice to put hard copies of emails in the file, any finding to the contrary

would have to be based on the thin reed that a "possibility" exists that some e-mails were deleted

without a hard copy thereof having been made.

      <u>Bruce Williamson</u> - Added in their reply is the assertion that spoliation occurred

as Williamson searched his computer just a week before his deposition and produced only three

e-mails, yet during his deposition admitted he failed to produce a number of e-mails.

Williamson's testimony does not support spoliation.  First, it appears that at the time of his

deposition, his computer had not been wiped clean. Second, he testified that the failure to produce these e-mails may have been because his search terms were not broad enough. While it appears that e-mails may not have been produced, it is unclear that they have been destroyed. Plaintiffs have not sustained their burden of showing spoliation.

In sum, the Court finds that with respect to all of the Individual County Defendants Plaintiffs have failed to sustain their burden that they spoliated evidence. The Plaintiffs have demonstrated that the County did spoliate evidence.

### B. Culpable State of Mind

Having determined that there was at least some spoliation of evidence, the Court now proceeds to determine the state of mind attributable to the destruction of documents. Plaintiffs argue that the failure to implement a litigation hold amounts to gross negligence.

In determining state of mind, it is important to note that while the duty to preserve evidence existed long before the events at issue, the law with respect to litigation holds and the preservation of electronically stored information was not in 2003 and 2004 developed to the extent that it is today. Indeed, it was not until *Zubalake V* was decided in mid - 2004 that the requirement to issue a litigation hold was established in the Southern District of New York. *See Pension Committee of the Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*, – F. Supp. 2d –, 2010 WL 184312, *3 & *7 (S.D.N.Y. Jan. 15, 2010)*. Decisions in this District adopting the requirement of a litigation hold were not issued until after the instant motion was filed and after the December 2006 amendments to the Federal Rules of Civil Procedure covering electronic discovery issues, the advisory committee notes for which embrace the concept of a litigation hold. *See, e.g., Valdez v. Town of Brookhaven*, 2007 WL 1988792 (E.D.N.Y. July 5, 2007); *M&T Morg. Corp. v. Miller*, 2007 WL 2403565 (E.D.N.Y. Aug. 17, 2007); *Great*

*Northern Ins. Co. v. Power Cooling Inc.*, 2007 WL 2687666 (E.D.N.Y. Sept. 10, 2007); *Toussie v. County of Suffolk*, 2007 WL 4565160 (E.D.N.Y. Dec. 21, 2007).   Finally, with respect to e-mails, it was unclear in 2004 that they had to be preserved in both their electronic and paper form when the party at issue had a paper based records retention policy.   Accordingly, with respect to the preservation of electronic evidence, the County's conduct was merely negligent.  *Cf. Pension Committee*, 2010 WL 184312, at *18 ("The failure to institute a written litigation hold in early 2004 in a case brought in federal court in Florida was on the borderline between a well established duty and one that was not yet generally required. thus, the rule of lenity compels the conclusion that this conduct *alone*, under these circumstance, is not sufficient to find that a plaintiff acted in a grossly negligent manner." ) (emphasis in original).  The County's failure to execute a comprehensive search for documents and its failure to sufficiently supervise or monitor document retention by its employees supports that the County acted in an indifferent fashion. None of the destruction, however, occurred as the result of willful misconduct or bad faith.  *Cf. De Espana*, 2007 WL 1686327 *4 (failure to issue litigation hold did not rise to the level of intentional willful destruction of evidence); *Treppel*, 2008 WL 866584, *9 (failure to take adequate measures to preserve ESI of key executive and their support staff was at least negligent); *Pastorello v. City of New York*, 2003 WL 1740606, *11-12 (S.D.N.Y. 1, 2003) (loss of data was grossly negligent when due to unfamiliarity with record-keeping of employee responsible for preserving documents).

With respect to Kopp who is not a named defendant**,** there is insufficient to evidence to conclude the destruction of his calendar was in bad faith.  In any event, given that when he destroyed the calendar he was not a County employee, Kopp's state of mind cannot be attributed to the County.

## C. Relevance and Prejudice

"[W]hen the destruction [of evidence] is negligent, relevance must be proven by the party seeking sanctions." *Treppel*, 2008 WL 866594, *9. A showing of gross negligence may, but need not necessarily, support a claim that missing evidence was relevant to the movant's case. *See Acorn*, 2009 WL 605859, *5 (citing cases); *De Espana*, 2007 WL 1686327, *6; *Toussie*, 2007 WL 4565160, *8. Even if the County's conduct could be deemed gross negligence, the circumstances of this case do not require a presumption of relevance and prejudice.

The County's conduct does not rise to the egregious level found in cases where relevance is determined as a matter of law. Here, the destruction occurred as a result of regular business practices at a time when the law with respect to the obligation to maintain evidence in both the electronic and paper format was not clear. The County's practice of wiping hard drives upon the departure of an employee may not have played a part in this case except for the fortuitous change in the County's governing party. Thus, whether the County's conduct is deemed negligent or grossly negligent, Plaintiffs must provide extrinsic evidence that any destroyed materials would have been favorable to their case. *See, e.g., Residential Funding*, 306 F.3d at 109; *ACORN*, 2009 WL 605859, *5. *See also Pension Committee*, 2010 WL 184312, at *5 ("It is not enough for the innocent party to show that the destroyed evidence would have been responsive to a document request. The innocent party must also show that the evidence would have been helpful in proving its claims or defenses - i.e. that the innocent party is prejudiced without that evidence. Proof of relevance does not necessarily equal proof of prejudice."), *id.* ("In other words, the innocent party must present evidence tending to show that the destroyed e-mails would have been favorable to its case.") (internal quotations omitted).

With respect to documents whose destruction is attributable to the County, it is unclear that Plaintiffs suffered any prejudice as destroyed documents apparently have been otherwise obtained. *Cf. Pension Committee*, 2010 WL 184312, at *11 ("While many of these documents may be relevant, the Citco Defendants suffered no prejudice because all were eventually obtained from other sources.") For example, Plaintiffs are in possession of the letter from Clear Channel to the County. With respect to e-mails and other electronic documents that were destroyed as result of the wiping of the hard drives, the County has produced many, if not all, in paper format. *Cf. Green v. McClendon*, 262 F.R.D. 284, 291 (S.D.N.Y. 2009). For example, Cabble, Dr. Mermelstein, Gallagher, and Gerdts all maintained paper versions of their emails and documents, which paper versions have been produced. Other e-mails have been produced by the Town of Riverhead, as well as other individuals and entities who were on the same routing list as County employees. Moreover, Plaintiffs can point to no "missing links," i.e. an e-mail that refers to an unproduced e-mail or document. Accordingly, sanctions in the form of an adverse inference, the striking of pleadings or orders of preclusion are inappropriate. Monetary sanctions are, however, warranted in this case. Plaintiffs should be awarded reasonable attorneys' fees and costs incurred in connection with this motion. "Monetary sanctions are appropriate 'to punish the offending party for its actions [and] deter the litigant's conduct, sending the message that egregious conduct will not be tolerated.'" *Id.* at 292 (quoting *In re WRT Energy Securities Litigation*, 246 F.R.D. 185, 201 (S.D.N.Y.2007)). Also, the County's carelessness gave Plaintiffs reason to believe that something improper had occurred.

## III.  The Request to Add Defendants

Plaintiffs' initial papers seemed to request leave to add certain county employees as defendants in order to assert "spoliation" claims against them. In their reply and at oral

argument, Plaintiffs clarified that they wish to add Dr. Mermelstein, Dr. Alicandro, Eric Kopp, and Peter Scully as Defendants because of their alleged role in the denial of the mass gathering permit (and as to some, assert spoliation claims). Given the absence of a proposed pleading, the request is denied without prejudice to renew.

## Conclusion

For the foregoing reasons, Plaintiffs' spoliation motion is denied except to the extent that Plaintiffs are awarded reasonable attorneys' fees and costs incurred in connection with the motion. Plaintiffs shall submit affidavit(s) and supporting time records on or before April 30, 2010.

Dated: Central Islip, New York
     March 25, 2010                  /s/_____
                                      Denis R. Hurley
                                      Senior District Judge