UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FIELD DAY, LLC, f/k/a/NEW YORK MUSIC
FESTIVAL, LLC, AEG LIVE LLC f/k/a
AEG CONCERTS LLC,

                         Plaintiffs

       -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
DEPARTMENT OF HEALTH SERVICES,
SUFFOLK COUNTY EXECUTIVE ROBERT
GAFFNEY, COMMISSIONER OF THE SUFFOLK
COUNTY DEPARTMENT OF HEALTH
SERVICES BRIAN L. HARPER, COMMISSIONER
OF SUFFOLK COUNTY POLICE DEPARTMENT
JOHN C. GALLAGHER, DIRECTOR OF SUFFOLK
COUNTY DEPARTMENT OF HEALTH SERVICES
ROBERT MAIMONI, CHIEF OF THE BUREAU OF
PUBLIC HEALTH PROTECTION BRUCE
WILLIAMSON, PRINCIPAL PUBLIC HEALTH
SANITARIAN ROBERT GERDTS, DEPUTY
SUFFOLK COUNTY ATTORNEY ROBERT
CABBLE, DEPUTY SUFFOLK COUNTY
EXECUTIVE JOE MICHAELS, SERGEANT
PATRICK MAHER OF THE SUFFOLK COUNTY
POLICE DEPARTMENT, THE TOWN OF
RIVERHEAD, RIVERHEAD CHIEF OF POLICE
DAVID HEGERMILLER and NEW YORK
STATE HEALTH COMMISSIONER ANTONIA
C. NOVELLO.

                     Defendants.

----------------------------------------------------------------X

**MEMORANDUM & ORDER**
Civil Action No. 04-2202

**APPEARANCES:**

**O'Melveny & Myers LLP**
Attorneys for Plaintiffs
7 Times Square
New York, New York 10036
By:    Charles E. Bachman, Esq.
        Peter Obstler, Esq.
        B. Andrew Bednark, Esq.

**Christine Malafi, Suffolk County Attorney**
Attorneys for Suffolk County Defendants
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York
By:     Christopher A. Jeffreys, Esq.
         Susan A. Flynn, Esq.

**Smith, Finkelstein, Lundberg, Isler & Yakaboski, LLP**
Attorneys for Town of Riverhead
456 Griffing Avenue
P.O. Box 389
Riverhead, NY 11901
By:     Phil Siegel, Esq.

**Thomas C. Sledjeski & Associates, PLCC**
Attorneys for Riverhead Police Chief David Hegermiller
18 First Street
P.O. Box 479
Riverhead, New York 11901
By:     Thomas C. Sledjeski, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs Field Day LLC f/k/a/ New York Music Festival and AEG Live LLC f/k/a/ AEG

Concerts LLC (collectively "Plaintiffs" or "Field Day") commenced this action for money

damages and injunctive relief against the County of Suffolk and the Suffolk County Department

of Health Services (collectively the "County") and numerous County employees[1] (the County

---

[1] The Individual County Defendants are Suffolk County Executive Robert Gaffney ("Gaffney"), Commissioner of the Suffolk County Department of Health Services Brian L. Harper ("Harper"), Commissioner of the Suffolk County Police Department John C. Gallagher ("Gallagher"), Director of the Suffolk County Department of Health Services Robert Maimone ("Maimone"), Chief of the Bureau of Public Health Protection Bruce Williamson ("Williamson"), Principal Public Health Sanitarian Robert Gerdts ("Gerdts"), Deputy Suffolk County Attorney Robert Cabble ("Cabble"), Deputy Suffolk County Executive Joe Michaels ("Michaels"), and Sergeant Patrick Maher of the Suffolk County Police Department ("Maher"). Parenthetically, the Court notes that Robert Maimone's name is variously spelled as Maioni, Maimoni, and Maimone; the Court will use "Maimone" as it is the spelling used in his

2

employees named as Defendants are collectively referred to as the "Individual County Defendants," and the Individual County Defendants and the County are collectively referred to as the "County Defendants"), the New York State Health Commissioner, the Town of Riverhead ("Riverhead"), and the Riverhead Police Chief ("Hegermiller"). Plaintiffs allege that they were unlawfully denied the right to stage a weekend-long concert within the Town of Riverhead because of the actions of the various Defendants. Presently before the Court are (1) Plaintiffs' motion for partial summary judgment against the County and the Individual County Defendants except Maher and Harper, and (2) the County Defendants' motion for summary judgment.[2] For the reasons set forth below, Plaintiffs' motion for partial summary judgment is denied *in toto*; the County Defendants' summary judgment motion is also denied subject to the following exceptions: Plaintiffs' claims against Individual County Defendants Maher and Harper are dismissed, as is Plaintiffs' prima facie tort claim as asserted against the County Defendants.

## Background

This action arises out of Field Day's efforts to promote and produce a two-day music festival featuring leading rap, hip-hop, and rock artists which was to take place June 7-8, 2003 (the "Festival").

After considering other locations, Field Day entered into a "License Agreement for Outdoor Event" (the "Agreement") with the Riverhead Community Development Agency

deposition.

[2] Defendants Riverhead's and Hegermiller's motions for summary judgment, as well as Plaintiffs' motion for partial summary judgment against those two Defendants, are addressed in a separate Memorandum and Order bearing today's date.

("CDA"), a "public instrumentality" of the Town of Riverhead on February 20, 2003.[3]  Under the terms of the Agreement, Field Day had the responsibility of securing "a 'Mass Gathering Permit' or such other assembly permit as is deemed necessary by the Commissioner of the Suffolk County Department of Health" prior to the concert "and a 'Special Event Permit' from the Town of Riverhead . . ."  Agreement ¶ 2.

Precisely when Field Day submitted its application to the County for a Mass Gathering Permit is unclear.  Thus, in Robert H. Gerdts's ("Gerdts") letter of March 24, 2003 to Andrew Dreskin ("Dreskin"), the Chief Operating Officer of Field Day, there is an indication that the application was received by the Suffolk County Department of Health Services on "February 27, 2003."  Bednark Decl. in Supp. of Pls.' Mot. for Partial Summ. J. against the County and Individual County Defs., Ex. 12, ¶ 1.  However, in an exhibit entitled "Field Day Music Festival Activity Summary," there is a notation that the receipt date was March 21, 2003.  *Id.*, Ex. 11.  In any event, it is undisputed that Gerdts and other health department staff members attended a meeting in Riverhead on February 27, 2003, and that thereafter during March and April of 2003, Field Day met and otherwise communicated with officials from the County and Riverhead to ensure coordination between the various agencies whose involvement would prove necessary for the concert to be held.  *Id.*, Exs. 9, 11, 16.  The project appeared to be moving in the right direction from Field Day's perspective as evidenced by the following excerpt from the previously mentioned March 24th letter from Gerdts to Dreskin: "The scope of the submitted document, the Preliminary Draft Event Operations Plan for the Field Day Music Festival, is sufficient to allow

---

[3]  The Agreement is attached as Exhibit 1 to the Declaration of B. Andrew Bednark submitted in support of Plaintiffs' motion for partial summary judgment against Suffolk County and the Individual County Defendants.

advertising and the . . . sale of tickets to commence . . . ."  Id., Ex. 12.

"Meanwhile, [Plaintiffs maintain], Plaintiffs' principal competitor, Clear Channel Entertainment, was working to thwart Field Day's efforts to obtain a Mass Gathering Permit" by, inter alia, hiring a lobbying firm to contact the County Executive's Office "to persuade it to deny the [permit]."  Pls.' Mem. in Supp. of Mot. for Partial Summ. J. against Suffolk County and the County Individual Defs. at 9.  That proposition finds support in the record.  Bednark Decl. in Supp. of Pls.' Mot. for Partial Summ. J. against the County and Individual County Defs., Ex. 47 at 20:14-21:4, 33:7-14, 37:13-38:2.  While it is unclear what effect, if any, Clear Channel's efforts to derail the project had in bringing about that result, it warrants mention that there is evidence which indicates that Clear Channel was sufficiently committed to that goal to cause a draft permit denial letter to be prepared for forwarding by the lobbyist to the County Executive for his consideration.  Id., Ex. 49; see also id., Ex. 46 at 40:6-25.

On May 27, 2003, Field Day's application was denied via a letter from Gerdts to Dreskin which reads in pertinent part:

> Chapter 1 State Sanitary Code Subpart 7-1 Temporary Residences and Mass Gatherings § 7-1:41 requires that applications for a permit to operate a mass gathering be accompanied by an engineering report. This report must include, in part, "a statement from the County sheriff, State police, New York State Department of Transportation or other law enforcement agency certifying that the traffic control plan is satisfactory."
>
> The Department has received notification from David J. Hegermiller, Chief of Police, Town of Riverhead, that his Department alone cannot implement an effective traffic control plan and therefore, is not able to support the issuance of the permit.
>
> Accordingly, your application for a permit to operate a mass gathering is denied.

*Id.*, Ex. 75.

While Gerdts's reference to Hegermiller's position was correct, there is evidence that his reliance on Mass Gathering § 7-1:41 was off-target. *Id.*, Ex. 8 at 314:10-318:14.

On June 3, 2003, the County moved in the New York State Supreme Court for an injunction to preclude Field Day from holding the Festival given the absence of the needed permit. That effort resulted in an ex-parte temporary restraining order being issued on June 4, 2003. Ex. H to Hegermiller's Opp'n to Pls.' Mot. for Summ. J. against Riverhead and Hegermiller.

Field Day alleges that Riverhead and Suffolk County, through their employees, unlawfully failed to approve its application by imposing a series of arbitrary prerequisites to the issuance of the permit. By way of two examples of such purported unconstitutional impediments, Plaintiffs cite Riverhead Police Chief Hegermiller's position that approximately 200 police officers would be necessary to service the event, and Suffolk County's insistence that before it could provide officers towards that goal, an intermunicipal agreement would have to be executed between Riverhead and the County.

Field Day asserts claims against various County Defendants for violations of its federal and state constitutional free speech rights, together with common law claims of tortious interference with contractual relations, tortious interference with business relations, prima facie tort, and negligence.

## Discussion

## I.      Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only

6

appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir. 2008); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See SCR Joint Venture*, 559 F.3d at 137; *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or more than "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in

his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)).[4] "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of a summary judgment motion." *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue , the moving party's burden under Rule 56

---

[4] The cited portion of Fed. R. Civ. P. 56(e) was renumbered as Rule 56(c)(4) as part of the amendments to Rule 56 effective December 1, 2010.

will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

## II.     County Defendants' Motion for Summary Judgment

County Defendants move for summary judgment maintaining that (A) the County properly applied the Mass Gathering Statute Law; (B) Individual County Defendants are entitled to qualified immunity; (C) Plaintiffs cannot establish *Monell*[5] liability; (D) Field Day is estopped by the doctrines of collateral estoppel and *res judicata* from litigating the validity of the denial of the Mass Gathering Permit; and (E) the state claims should be dismissed either because once the federal claims are dismissed, there is no pendent jurisdiction, or for lack of evidentiary support.

### A.     Application of the Mass Gathering Statute

As to the County Defendants' first argument, they maintain that "evidentiary proof elicited during the course of discovery has conclusively established that the individual Suffolk County defendants properly applied the Mass Gathering Statute, and properly denied the Plaintiffs' application for a Mass Gathering Permit. There was simply insufficient police

---

[5] *See Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 693 (1978).

protection to implement any effective traffic control plan, and insufficient police protection to make certain that the potential emergency needs of individuals traveling to the event, and those in the neighborhood surrounding the proposed site, could be protected." County's Mem. in Supp. of Mot. for Summ. J. at p. 8-9. There is abundant evidence in the record supporting that position; however, there is also evidence – albeit slight by comparison – which would permit the trier of fact to conclude that the County's refusal to complement the Riverhead officers available for the event by supplying Suffolk County police officers as requested by Hegermiller (Bednark Decl. in Supp. of Pls.' Mot. for Partial Summ. J. against Riverhead and Hegermiller, Ex. U) was attributable to Clear Channel becoming involved in the process by, inter alia, contacting County officials directly, as well as through a lobbying outfit, in an effort to prevent a permit from being issued to Field Day. *See, e.g.*, Bednark Decl. in Supp. of Pls.' Mot. for Partial Summ. J. against the County and Individual County Defs., Ex., 31 at 204:1-205:14 (Clear Channel's vice president Delsener directly communicating with Robert Delagi, an apparent Suffolk County Department of Health Services employee [*id*. at 124:7-12] asking that the permit not be issued); at 20:14-21:10 (lobbyist discusses event with a Deputy County Executive on at least two occasions); Ex. 47 at 33:7-14 (lobbyist opines that Clear Channel did not want the event to go forward given that "[t]hey were competitors"); and Ex. 49, *compare* the foregoing exhibits with Ex. I to Bednark Decl. in Supp. of Hegermiller's Opp'n to Pls.' Mot. for Summ. J. against Riverhead and Hegermiller at 50 (the deposition testimony of Clear Channel's Delsener in which he indicated, in part, that "we wanted [the festival] to go forward . . . . They're going to fall on their face.") (internal quotations marks deleted). To the extent Clear Channel improperly intervened and that intervention was factored into the County's decision to deny Field Day the needed permit, the

County did not properly apply the Mass Gathering Statute. By way of another example of an arguable misapplication of the Mass Gathering Statute, there is evidence that the County's belated insistence[6] on an intermunicipal agreement was out-of-sync with its approach vis-a-vis some other events held "outside" the police district where police resources were provided absent such an agreement. Bednark Decl. in Supp. of Pls.' Mot. for Partial Summ. J. against County and Individual County Defs., Ex. 64 at 138:8-142:1. In sum, there are material issues of fact as to whether the County Defendants properly applied the Mass Gathering Statute.

### B. Qualified Immunity

The Individual County Defendants next maintain that they are entitled to summary judgment on the basis of qualified immunity. "Government actors have qualified immunity to § 1983 claims 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010) (quoting *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 432 (2d Cir. 2009)). Thus, "[a] qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996).

"Qualified immunity shields government officials from liability for civil damages as a

---

[6] The purported need for an intermunicipal agreement was first communicated to Field Day "[s]ometime after [] May 13th." Bednark Decl. in Supp. of Pls.' Mot. for Partial Summ. J. against County and Individual County Defs., Ex. 58 at 47:4-12. The Riverhead Supervisor did not receive notice of this requirement until May 15, 2003. *Id.*, Ex. 65.

result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). A court may grant summary judgment on qualified immunity grounds "if [the movant] adduces sufficient facts such that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the [movant] to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Hartline v. Gallo,* 546 F.3d 95, 102 (2d Cir. 2008) (internal quotations omitted).

Qualified immunity is an affirmative defense. As such, the burden of proof rests on the Individual County Defendants asserting the defense to demonstrate that it was objectively reasonable for him to believe that his conduct did violate a federal right of Plaintiffs. *See Green v. City of New York,* 465 F.3d 65, 83 (2d Cir. 2006). However, those Defendants, in endeavoring to discharge that burden, describe their activities in general terms collectively, supplemented by the following argument:

> Based upon applicable precedent, it is submitted that this Honorable Court should dismiss the plaintiffs' action in its entirety. However, for the sake of completeness, it is also submitted that all of the individually named County defendants are entitled to immunity for their actions. As demonstrated by the accompanying declaration and its supporting exhibits, many of the individually named Suffolk County defendants had absolutely nothing to do with the permitting process: they were information gatherers, and nothing more. Surely, there is no need to discuss the non-involvement of those individual defendants any further.

Mem. in Supp. of Suffolk County Defs.' Mot. for Summ. J. at 6.

The referenced "declaration" consists of a well crafted overview of the case, including a

brief synopsis of some of the deposition testimony of the Individual County Defendants as well as non-party witnesses. However, that general information, regarding "many" of the Individual County Defendants, is simply insufficient to determine which individuals, if any, are entitled to qualified immunity.[7] To accomplish that task, a road map from counsel is needed, particularly given the voluminous nature of the record (1) specifically referencing the evidence thus far adduced pertaining to each qualified immunity-claimant's conduct, and (2) legal argument explaining why that conduct entitles that Defendant to qualified immunity as a matter of law at this stage of the proceeding. Simply put, the moving Defendants have failed to carry their burden on the affirmative defense of qualified immunity, and their conclusory motion for summary judgment on this ground is, therefore, denied. *Cf. Shechter v. Comptroller of the City of New York*, 79 F.3d 265, 270 (2d Cir. 1996) and *Crawford v. Coughlin*, 1996 U.S. Dist. Lexis 6015, *11 (W.D.N.Y.).

Attention will now be turned to Harper and Maher. Harper was the Commissioner of the Suffolk County Department of Health Services, an administrative arm of the County, from 2004 through October 2006. He was not employed by the County of Suffolk during the time the events detailed in the complaint took place. *See* uncontroverted fn. 1 of Jeffreys Decl. in Opp'n to Pls.' Mot. for Partial Summ. J. against County and County Defendants. Moreover, he is sued only in his official capacity (*see* Second Amended Complaint ¶ 15); therefore the real party in interest is the County, *see, e.g., Hafer v. Melo*, 502 U.S. 21, 25-26 (1991); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and the County is a named party to this action. For these

---

[7] Individual County Defendants Harper and Maher, as will be explained in the text momentarily, are entitled to summary judgment.

reasons, dismissal of the claims against Harper is appropriate.

Defendant Maher is also entitled to summary judgment. On the record before the Court there is no dispute that Maher, a sergeant in the Suffolk County Police Department, was assigned, as low man on the totem pole, to attend meetings regarding the Festival to gather information and report it back to his superiors. (Maher Dep. at 64:9-65:16, 92:23-93:11) (said Dep. is Ex. K to Jeffreys Decl. in Opp'n to Pls.' Mot. for Partial Summ. J. against County and County Defendants.)) The uncontroverted evidence demonstrates that he played no meaningful role in the County's decision not to assist Riverhead or otherwise in the permitting process.

### C.     *Monell Liability*

In further support of its motion for summary judgment, the County asserts as its third ground that Plaintiffs cannot establish liability on its part. A municipality cannot be held liable under §1983 on a respondeat superior theory for its employees' torts. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In order to bring a § 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy. *Id.* at 690-91.

The existence of a municipal policy or custom may be pled in any of four ways.   A plaintiff may allege

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) *actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights*; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their

> subordinates, amounting to deliberate indifference to the rights of
> those who come in contact with municipal employees.

*Bonds v. Suffolk Cnty. Sheriff's Dept.*, 2006 WL 3681206, at *2 (E.D.N.Y. Dec. 5, 2006) (internal

quotations and citations omitted (emphasis added)); *see also Gladwin v. Pozzi*, 2010 WL

5141233, *2 (2d Cir. Dec. 20, 2010) (Summary Order) ("A municipality may be held liable under

§ 1983 where there is a deprivation of rights pursuant to a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers, . . . or where .

. . the contention is not that the actions complained of were taken pursuant to a local policy but

instead that the actions were taken by an official who had final policymaking authority in the

particular area involved.") (internal quotations and citations omitted).

As Plaintiffs correctly note, such Individual County Defendants as Gaffney, Gallagher

and Gerdts were policy makers for present purposes. Moreover, as "it is plain that municipal

liability may be imposed for a single decision by municipal policymakers under appropriate

circumstances," even if "that action is taken only once," *Pembaur v. City of Cincinnati*, 475 U.S.

469, 480-81 (1986), the County Defendants' argument that Plaintiffs' claim fails under *Monell*

because the challenged action constitutes "a single, isolated occurrence rather than a policy or

custom of the County" (Mem. in Supp. of County Defs.' Mot. for Summ. J. at 12), is

unpersuasive.


### D.     *Collateral Estoppel and Res Judicata*

Turning now to the County's argument that Field Day is estopped by the doctrines of

collateral estoppel and *res judicata* from litigating the validity of the denial of the Mass

Gathering Permit because of the temporary restraining order issued by a Justice of the New York State Supreme Court, the Court similarly finds that position to be unpersuasive. First, the Court notes that no such defense is contained in the County Defendants' answer. *See* Ex. B to County Defs.' Rule 56.1 Statement. Assuming arguendo they may now assert these defenses, County Defendants have not cited any case holding that a party who is restrained by a temporary restraining order obtained *ex parte* had "a full and fair opportunity" to litigate the relevant issue.[8] Also off-target is the County's argument that "based on the nature of the claim presented in the State Supreme Court," the temporary restraining order "finally determined the issue presented [in the current action]" (County Defs.' Reply Mem. in Further Supp. at 9); the issue in the state court involved the impropriety of holding a mass gathering sans a Mass Gathering Permit, a distinct issue from those before this Court.

E. *State Law Claims*

Turning to the state law claims,[9] many of the issues of fact that precluded summary judgment in favor of County Defendants on Plaintiffs' § 1983 claim similarly preclude summary judgment in their favor on the state-based claims for tortious interference with contract, tortious interference with business relations, and negligence. However, the situation is otherwise with

---

[8] The Court notes that less than a week after obtaining the temporary restraining order and after Field Day held a shortened (one-day) version of the Festival in another venue, the County's Health Department Commissioner (the named plaintiff in the proceeding) voluntarily discontinued the action. *See* Bednark Decl. in Opp'n to the County Defs.' Mot. for Summ, J., Ex. 102.

[9] Individual County Defendant Harper is not named as a Defendant in any of the state-based claims.

respect to the prima facie tort claim against the County Defendants. "There can be no cause of action [for prima facie tort] unless malevolence is the *sole* motive for a defendant's otherwise lawful act." *Schutz v. Washington County*, 157 A.D.2d 948, 950 (3d Dep't 1990)(emphasis added; internal quotation marks and cite deleted). There is no evidence that any of the County Defendants harbored animosity towards Field Day or its principals. Accordingly, the County Defendants are awarded summary judgment as to this state-based claim. In sum, the County Defendants' motion for summary judgment is granted as to Harper, Maher, and as to Plaintiffs' prima facie tort claim, and is otherwise denied.

### III.    Subject Matter Jurisdiction

Before addressing Plaintiffs' motion for partial summary judgment, attention will be directed to a more broad based contention contained in the County Defendants' submission, to wit, that since the Plaintiffs are not pursuing a first amendment content-based discrimination claim, this Court lacks the subject matter jurisdiction necessary to adjudicate the present dispute. The following excerpt from the County Defendants' Memorandum of Law well synopsizes their position:

> In order to maintain subject matter jurisdiction in this Court, the plaintiffs have continually alleged that the County defendants improperly denied the plaintiffs' Mass Gathering Permit based upon the content of their proposed event. In fact, the sole constitutional tort alleged by the plaintiffs is a claimed violation of First Amendment free speech rights.
>
> The Second Circuit's initial determination in this case established that the New York Mass Gathering Statute was a constitutional exercise of governmental authority. *See Field Day*, 463 F.3d at 181. Thus, as the Circuit determined, the sole remaining First

Amendment claim was whether the County defendants improperly applied to the Mass Gathering Statute based upon the alleged content of the plaintiffs' proposed event. *Field Day*, 463 F.3d at 194.

The plaintiffs' brief in support of their motion for summary judgment does not recite any example of content-based discrimination. In fact, the plaintiffs' brief conclusively states "Plaintiffs are not contending that defendants' conduct was content based." *See* Plaintiffs' Memorandum of Law at page 20, fn. 6. That concession ends the last remaining constitutional inquiry.

The plaintiffs' admission that there is no content based claim requires denial of the plaintiffs' present motion, and dismissal of the plaintiffs' claim.

County Defs.' Mem. in Opp'n to Pls.' Mot. for Partial Summ. J. at 2-3.

To place Plaintiffs' argument in context, it is necessary to consider the portion of the Second Circuit decision in *Field Day* referenced above. That excerpt reads as follows:

Finally, the Suffolk County Employees raised, for the first time at oral argument, several new contentions, including that Suffolk County had no duty to provide police officers to assist in this event and that, therefore, the refusal of assistance could not be a constitutional violation. "Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal." *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998). We note only in passing that the Second Amended Complaint, read fairly, indicates that Field Day could prove that Suffolk County has provided assistance to other events at the Park, including the New York Air Show and the Bonnaroo Music Festival, and that its refusal here was based solely on disapproval of Field Day as speaker or the content of Field Day's speech. Such conduct would, of course, raise serious constitutional concerns. *See Chicago Park Dist.*, 534, U.S. at 325, 122 S. Ct. 775 ("Granting [discretionary] waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional."). However, we do not pass on this issue given the lack of briefing to this court.

*Field Day v. County of Suffolk*, 463 F.3d 167, 194-95 (2d Cir. 2006).

The portion of the above excerpt beginning with "[w]e note only in passing," is *dictum*.

But beyond that, it appears that the Circuit was simply indicating that the subject of the County Defendants' belatedly raised arguments about the absence of a duty on their part to furnish police officers for the Festival is tangential to the true gravamen of Plaintiffs' complaint. In the Circuit's view, the references in the complaint vis-a-vis police assistance was done for the purpose of alleging that police assistance was provided for other events at the site but not to Plaintiffs, with the difference in treatment supposedly being due to the County's disapproval of the content of the message sought to be conveyed by Field Day. There is nothing to suggest that the Circuit in making that comment meant to circumscribe the First Amendment claims that may be pursued by Plaintiffs consistent with portions of their complaint and the pretrial proof. And to step-back for a moment, it is undisputed that the content of the Festival, namely music, "is speech for purposes of the First Amendment." *Id.* at 175-176. Moreover, a prior restraint on speech was implicated given that obtaining a Mass Gathering Permit was a precondition to holding the event. *Lamar Advertising Co. v. Township of Elmira*, 328 F. Supp. 2d 725, 733 (E.D. Mich. 2004).

Here, as the County Defendants note, Plaintiffs are not claiming that Defendants' conduct was content based.[10] As a content-neutral regulation, the Mass Gathering Statute may

---

[10] As explained by the Supreme Court, a "[g]overnment regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)(internal quotation marks and cite deleted).

Plaintiffs are not, as the County Defendants contend, necessarily abandoning their content-based claim. Instead Plaintiffs' position is as follows: "Although evidence abounds here of animus towards the content of the Festival by a number of participants in the permitting process, and Plaintiffs expect to be able to prove that animus at trial, for purposes of this [summary judgment] motion, plaintiffs are not contending that defendants conduct was content based." Pls.' Memo in Supp. of Mot. for Partial Summ. J. against Suffolk County and the Individual County Defendants at 20, n.6.

legitimately restrict the time, place and manner of the event, provided such restrictions are "narrowly tailored to serve a significant government interest . . . ." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Just as a content-neutral statute must be narrowly drawn to pass constitutional muster, its implementation must be similarly cabined lest a constitutional violation occur. If the trier of fact ultimately determines from the disputed proof already in the record that, e.g., the County denied Field Day a Mass Gathering Permit by improperly requiring an intermunicipal agreement or in response to pressures asserted by Clear Channel on individuals within the permitting process, it follows that the County will be hard-pressed to justify the obstacles placed in Field Day's path as "narrowly tailored to serve the government's legitimate . . . interests." *Ward*, 491 U.S. at 798; *see also Million Youth March, Inc. v. Safir*, 18 F. Supp. 2d 334, 345-47 (S.D.N.Y. 1998). And, for present purposes, it does not matter whether the County Defendants' actions were intended to impinge on Field Day's constitutional rights as long as the proof at trial establishes that such actions brought about that result. *See Ward*, 491 U.S. 781 and *Million Youth March, Inc. v. Safir*, 18 F. Supp. 2d 334 (both cases implicitly indicating as such via the Courts' discussions of the factors to be considered in determining the validity of a constitutional attack on a content-neutral regulation, or its implementation, without any reference to the state actors' intent).

In sum, the fact that Field Day is not mounting a content based First Amendment attack in seeking summary judgment on its § 1983 claim against the County Defendants and in opposing the County Defendants' motion for like relief does not divest this Court of subject matter jurisdiction; the County Defendants' purported misapplication of the Mass Gathering Statute, if established, would establish a § 1983-First Amendment violation.

## IV. Plaintiffs' Motion for Partial Summary Judgment Against the County and Individual County Defendants

In support of their motion for summary judgment on their § 1983 claim, Plaintiffs maintain that the County Defendants may not invoke reasons for the denial of the Mass Gathering Permit other than the reason provided in its May 27, 2003 denial letter, citing the Second Circuit's decision in this case.  *See Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167 (2d Cir. 2006).  The Circuit, in affirming the denial of the County Defendants' motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, stated as follows:

> To the extent that the Suffolk County Employees now invoke other sections of the Sanitary Code to support the denial of the Application, New York law limits this Court's review "to the grounds invoked by the agency." *Scherbyn v. Wayne-Finger Lakes Bd. of Co-op. Educ. Servs.*, 77 N.Y.2d 755, 758, 570 N.Y.S.2d 474, 573 N.E.2d 562 (1991).  Furthermore, in accordance with the interpretation of the Mass Gathering Law and Sanitary Code given above, the rejection of the Application based on any other ground would still have to be reasonable, and Field Day has alleged that the rejection was unreasonable.

*Field Day*, 463 F.3d at 194.

I do not read the quoted excerpt from that decision as precluding consideration by this Court or, ultimately, by the trier of fact of other reasonable grounds proffered by the County for denying Field Day's permit application.  The Second Circuit was simply explaining its appellate role in reviewing the motion to dismiss.  There is evidence in the record that would permit the trier of fact to conclude that other reasonable grounds for the County's decision existed.  For example,  if the jury found that requiring 200 police officers for the Festival was reasonable and the County's decision not to supply officers in the absence of a intermunicipal agreement

appropriate, then the jury could conclude that public safety concerns provided a valid basis to deny the Mass Gathering Permit.

Plaintiffs' motion for partial summary judgment against the County Defendants is denied.


## Conclusion

Summary judgment is granted in favor of Defendants Harper and Maher and as to the County Defendants' motion to dismiss Plaintiffs' prima facie tort claim; the motion of the County Defendants is otherwise denied. Plaintiffs' motion for partial summary judgment is denied *in toto*.

**SO ORDERED.**


Dated: Central Islip, New York
      June 28, 2011

                                    \_\_\_\_\_/s_____
                                      Denis R. Hurley
                                      United States District Judge